UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH KLIPPENSTEIN<br>437 New York Avenue, NW<br>Unit 1010<br>Washington, DC  20001,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL ARCHIVES AND<br>RECORDS ADMINISTRATION<br>8601 Adelphi Road<br>College Park, MD  20740,<br><br>    and<br><br>DEBRA STEIDEL WALL<br>Acting Archivist of the United States<br>National Archives and Records<br>Administration<br>8601 Adelphi Road<br>College Park, MD  20740,<br><br>    Defendants. | Civil Action No. 1:23-cv-01083 |

## COMPLAINT

Plaintiff Kenneth Klippenstein brings this action against Defendants National Archives and Records Administration and Debra Steidel Wall pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*; the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101 *et seq.*, 3010 *et seq.*, and 3301 *et seq.*, which includes the Disposal of Records Act, 44 U.S.C. §§ 3301-3314; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651.

## JURISDICTION

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Kenneth Klippenstein ("Klippenstein") is a U.S. citizen residing in the District of Columbia. He is an investigative reporter for *The Intercept* who focuses on national security. Most relevantly for this lawsuit, Klippenstein was the first journalist to report on the destruction of the United States Secret Service ("Secret Service") text messages which are one of the subjects of this case.

4. Defendant National Archives and Records Administration ("NARA") is the primary agency responsible for assisting federal agencies in maintaining adequate and proper documentation of policies and transactions of the federal government. NARA is tasked with appraising records, regulating and approving the disposition of federal records, operating Federal Records Centers, and preserving permanent records.

5. Defendant Debra Steidel Wall is the Acting Archivist of the United States ("Archivist") and is sued solely in her official capacity. As Acting Archivist, Ms. Wall supervises and directs NARA. The Archivist is responsible for the preservation of federal records. The Archivist's duties under the Federal Records Act include authorizing the disposal of federal records after a specified period of time through her approval of schedules submitted to her by individual agencies, or through the promulgation of General Records Schedules. If the Archivist discovers any actual or impending destruction of federal records, the Archivist is under

a statutory obligation to initiate action through the Attorney General to restore the records. For purposes of this Complaint, Defendants NARA and the Archivist shall be referred to jointly as Defendant Archivist.

## BACKGROUND

### *PART I: RECORDS DESTRUCTION AND AGENCY INACTION*

*Text Messages Related to January 6 Are Destroyed:*

6. On 6 January 2021, a mob attacked the United States Capitol. This attack will herein be referred to as "January 6."

7. On 16 January 2021, the House Permanent Select Committee on Intelligence, the House Committee on Homeland Security, the House Committee on Oversight and Reform, and the House Committee on the Judiciary jointly sent a letter to the Federal Bureau of Investigation ("FBI"), the National Counterterrorism Center, the Department of Homeland Security ("DHS"), and the Office of the Director of National Intelligence instructing them, *inter alia*, to preserve records related to January 6.

8. On 27 January 2021, the Secret Service commenced a pre-planned Microsoft Intune phone migration program ("Intune migration") which would wipe all affected phones.

9. Also in January 2021, text messages were lost in a "reset" of the government phones used by Acting Secretary of Homeland Security Chad Wolf and Acting Deputy Secretary of Homeland Security Ken Cuccinelli ("Leadership text messages").

10. On 26 February 2021, DHS Inspector General Joseph Cuffari ("Cuffari" or "DHS OIG") requested electronic communications from the Secret Service related to January 6.

11. On 1 April 2021, the Intune migration was completed.

*DHS OIG Obstructs Efforts to Recover Deleted Text Messages:*

12. In May 2021, the Secret Service informed Cuffari that an unknown number of text messages from 5-6 January 2021 were erased during the Intune migration. The Secret Service also claimed that none of the texts DHS OIG was seeking were lost in the Intune migration.

13. On 11 June 2021, DHS OIG requested text messages "sent or received by 24 Secret Service personnel during the period of December 7, 2020 through January 8, 2021" ("Secret Service text messages"). Metadata shows that ten of the twenty-four personnel sent or received text messages which were not retained.

14. In July 2021, DHS OIG advised the Secret Service that it was no longer seeking the Secret Service text messages.

15. In December 2021, DHS OIG reopened the inquiry into the Secret Service text messages.

16. In February 2022, the Federal Protective Service ("FPS")—another DHS component which had discovered deleted text messages—offered its phones to DHS OIG, on the grounds that it lacked the resources to recover lost text messages and other records on its own.

17. DHS OIG personnel made plans to collect the FPS phones and contact all DHS components to arrange for data specialists to help retrieve any deleted text messages. On 18 February 2022, a DHS OIG deputy inspector general directed personnel not to take any phones and not to seek any data from them.

18. Also in February 2022, DHS OIG learned of the deletion of the Leadership text messages.

19. On 14 July 2022, Cuffari first informed the House and Senate Committees on Homeland Security that "many US Secret Service text messages from January 5 and 6, 2021, were erased as part of a device replacement program."

20. On 20 July 2022, DHS OIG directed the Secret Service to stop its own investigation into the deletion of the Secret Service text messages, claiming that it had opened a criminal investigation.

21. In or about March 2023, the Integrity Committee of the Council of Inspectors General for Integrity and Efficiency ("CIGIE") informed Cuffari and his Chief of Staff Kristen Fredricks ("Fredricks") that it was investigating DHS OIG regarding the deletion of text messages.

22. As of this writing, CIGIE's most recent request for information pertaining to this investigation was sent on 3 April 2023.

23. On 4 April 2023, Cuffari, Fredricks, and DHS OIG Chief Counsel James Read filed the case *Fredricks v. Council of the Inspectors General on Integrity and Efficiency, Integrity Committee*, No. 23-442 (E.D. Va.), which asks the court to, *inter alia*, "enjoin the actions of [CIGIE] against [them] and prohibit further actions by [CIGIE] against them without further order of [the] Court."

### PART II: NARA INACTION AND KLIPPENSTEIN'S REQUESTS FOR ACTION

24. On 19 July 2022, NARA sent a letter to the Secret Service Agency Records Officer regarding the Secret Service text messages. It assigned Case No. UD-2022-0054 to this matter.

25. NARA stated, "In accordance with 36 CFR 1230.16(b), NARA requests that the Secret Service look into this matter. If it is determined that any text messages have been

improperly deleted (regardless of their relevance to the OIG/Congressional inquiry of the events on January 6, 2021), then the Secret Service must send NARA a report within 30 calendar days of the date of this letter with a report documenting the deletion. This report must include a complete description of the records affected, a statement of the exact circumstances surrounding the deletion of messages, a statement of the safeguards established to prevent further loss of documentation, and details of all agency actions taken to salvage, retrieve, or reconstruct the records."

26.     On 26 July 2022, Klippenstein sent a letter to NARA requesting that NARA "immediately request the United States Attorney General initiate action under 44 U.S.C. § 2905 to recover text messages from 5-6 January 2021 which were deleted or otherwise destroyed or removed from government control by the [Secret Service]."

27.     Klippenstein explained that NARA's current course of action was inadequate because of the shifting narratives being utilized by the Secret Service in an attempt to avoid oversight, stating that "the [Secret Service] has lost the benefit of the doubt in this matter through its obfuscation and obstruction, and each day that passes without aggressive measures being taken to recover these critical messages makes it more likely that they cannot be recovered."

28.     Klippenstein further explained, "Moreover, even if one credits the conflicting statements and excuses, one is left with the conclusion that the task of recovering the text messages is simply beyond [the Secret Service]'s technical capabilities. Viewed through the lens most favorable to the agency, these claims demonstrate that [the Secret Service] is, at best, out of its depth, and that prompt action needs to be taken by a more competent forensic agency. Furthermore, it is an undisputed fact that the Department of Justice ("DOJ") and Federal Bureau

of Investigation ("FBI") have significantly greater *legal* resources and authorities to recover such information, which [the Secret Service] lacks."

29. Klippenstein concluded, "While the Federal Records Act allows a reasonable amount of time for NARA to directly request that the United States Attorney General initiate action under 44 U.S.C. § 2905, we maintain that there is currently an urgent need for these records and that the ongoing risk of them becoming unrecoverable, coupled with [the Secret Service]'s obduracy thus far, means that it is more appropriate to measure the 'reasonable amount of time' for NARA to make such a request in days, not weeks or months. Simply put, NARA should not afford [the Secret Service] any more time to explain its actions when what is of paramount importance is *recovering the messages themselves*."

30. On 28 July 2022, after learning of the destruction of the Leadership text messages, Klippenstein again sent a letter to NARA, this time asking it to "immediately investigate—with the assistance of the United States Attorney General if necessary—the apparent widespread deletion of text messages from phones maintained by various [DHS] components between November 2020-April 2021."

31. Klippenstein explained, "[G]iven that, as with the Secret Service messages, the DHS Office of the Inspector General knew about this records destruction for months without notifying anyone, there is clearly a lack of either willingness or capacity to remedy this problem inside of DHS."

32. Klippenstein concluded, "Therefore, we request that NARA take immediate action to identify any government phones maintained by a DHS component which were migrated, transitioned, replaced, reset, or otherwise materially altered between November 2020 and April 2021 and ascertain that all text messages were properly backed up for those phones.

This is not limited to just text messages or phones which might pertain to the January 6, 2021, incident, in recognition of the fact that we currently do not have any way of knowing what *other* text messages pertaining to *other* important DHS matters were similarly destroyed. Furthermore, should NARA identify any phones for which messages were not properly backed up, we request that it take immediate action to recover those messages."

33. On 1 August 2022, NARA sent a letter to the DHS Department Records Officer regarding the widespread deletion of text messages. It assigned Case No. UD-2022-0055 to this matter.

34. NARA stated, "In accordance with 36 CFR 1230.16(b), NARA requests that DHS look into this matter. The Department must identify and report to NARA whether any government phones and/or accounts that were maintained by DHS lost text messages or any other records as part of the mobile phone migration process. In particular, we are requesting that you focus on the devices and accounts of senior leaders of DHS. This is not limited to text messages that may pertain to the January 6, 2021 inquiry. Additionally, this review should include how DHS manages their text messages and how the process of device migration at the Department complies with federal recordkeeping requirements."

35. NARA concluded, "We understand that this review may take a considerable amount of time to conduct, and may be put on hold pending an ongoing review by the Office of Inspector General. We are requesting an interim report with 30 calendar days that will include DHS's plan for review and a timeline to complete this review. If the Department determines that federal records were deleted without proper disposition authority, your final report must include a complete description of the records affected, a statement of the exact circumstances surrounding the deletion of messages, a statement of the safeguards established to prevent further

loss of documentation, and details of all agency actions taken to salvage, retrieve, or reconstruct the records."

36. Upon information and belief, both Case Nos. UD-2022-0054 and UD-2022-0055 remain open, the deleted text messages have not been recovered, and the Archivist has not requested that the United States Attorney General initiate action under 44 U.S.C. § 2905 to recover them.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (APA/FRA – COMPEL ACTION TO RESTORE DELETED RECORDS)

37. Plaintiff repeats and realleges the allegations contained in all paragraphs set forth above.

38. Under the FRA, the Archivist is required to notify the head of a federal agency of any actual destruction of records in the custody of the agency that comes to his attention and assist the head of the agency in initiating action through the Attorney General for the recovery of those records and for other redress provided by law.

39. Furthermore, if the head of the agency does not initiate an action for recovery or other redress within a reasonable period of time after being notified, the Archivist must request that the Attorney General initiate such action.

40. Upon information and belief, the Archivist has not assisted DHS in initiating action through the Attorney General to recover any deleted text messages. Upon information and belief, the Archivist has also failed to request that the Attorney General initiate action after DHS failed to act within a reasonable time.

41. Klippenstein has a direct interest in ensuring that the deleted text messages are maintained, preserved, and made accessible to the public in accordance with federal law.

42. Upon information and belief, by failing to restore any relevant deleted text messages, the Archivist is violating her clearly mandated ministerial duty under 44 U.S.C. § 2905 to request that the Attorney General initiate action or seek other legal redress to recover any relevant deleted records, thereby harming Klippenstein by denying him—and through him, the public—access to this information of vital and time-sensitive public interest.

43. Klippenstein is therefore entitled to relief in the form of a declaratory order that the Archivist is in violation of her statutory responsibilities under 44 U.S.C. § 2905 and an injunction compelling the Archivist pursuant to that statute to request that the Attorney General initiate action or seek other legal redress to recover any deleted text messages.

## SECOND CAUSE OF ACTION

## (FRA/MANDAMUS – COMPEL ACTION TO RESTORE DELETED RECORDS)

44. Plaintiff repeats and realleges the allegations contained in all paragraphs set forth above.

45. The FRA is clear and the duties thereunder plainly defined: the Archivist is required to notify the head of a federal agency of any actual destruction of records in the custody of the agency that comes to the Archivist's attention and to assist the head of the agency in initiating action through the Attorney General for the recovery of those records and for other redress provided by law.

46. In furtherance of these duties, the action that the FRA requires of the Archivist is equally clear and plainly defined: if the head of the agency does not initiate an action for

recovery or other redress within a reasonable period of time after being notified, the Archivist must request that the Attorney General initiate such action.

47. The duties imposed on the Archivist by these statutory provisions are non-discretionary ministerial duties.

48. Klippenstein has a direct interest in ensuring that the deleted text messages are maintained, preserved, and made accessible to the public in accordance with federal law.

49. Upon information and belief, by failing to restore any relevant deleted text messages, the Archivist is violating her clearly mandated ministerial duty under 44 U.S.C. § 2905 to request that the Attorney General initiate action or seek other legal redress to recover any relevant deleted records, thereby harming Klippenstein by denying him—and through him, the public—access to this information of vital and time-sensitive public interest.

50. Klippenstein is therefore entitled to relief in the form of a writ of mandamus, ordering the Archivist to comply with the statutory duty imposed by 44 U.S.C. § 2905 to request that the Attorney General initiate action or seek other legal redress to recover any relevant deleted records.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kenneth Klippenstein prays that this Court:

(1) Declare the inaction of the Archivist to request that the Attorney General initiate action or seek other legal redress to recover any relevant deleted records a violation of federal law;

(2) Order the Archivist, in the form of injunctive and mandamus relief, to request that the Attorney General initiate action or seek other legal redress to recover any relevant deleted records;

(3) Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(4) Award reasonable costs and attorneys' fees as provided in 28 U.S.C. § 2412(d) or any other applicable law;

(5) Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(6) Grant such other relief as the Court may deem just and proper.

Date:   April 19, 2023

                                                                              Respectfully submitted,

                                                                              /s/ Kelly B. McClanahan
                                                                              Kelly B. McClanahan, Esq.
                                                                              D.C. Bar #984704
                                                                              National Security Counselors
                                                                              4702 Levada Terrace
                                                                              Rockville, MD 20853
                                                                              301-728-5908
                                                                              240-681-2189 fax
                                                                              Kel@NationalSecurityLaw.org

                                                                              *Counsel for Plaintiff*