## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KLIPPENSTEIN,

        Plaintiff,

    v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, *et al.*

       Defendants.

Case No. 23-cv-1083-TSC

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS OR TO CONSOLIDATE

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.      STATUTORY BACKGROUND ............................................................................. 2

II.     PROCEDURAL BACKGROUND .......................................................................... 4

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT ................................................................................................................... 5

I.      KLIPPENSTEIN LACKS STANDING BECAUSE ANY INJURY IS NOT
        REDRESSABLE ........................................................................................................ 5

        A.      Secret Service ............................................................................................... 8

        B.      DHS ............................................................................................................... 9

II.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF ON THE MERITS ... 10

        A.      The FRA's Enforcement Duty Applies Only When Records Have Been
                Removed From Agency Custody ................................................................ 10

        B.      Plaintiff Has Failed To Plead Facts Sufficient To Overcome The Presumption
                Of Regularity ............................................................................................. 14

III.    MANDAMUS JURISDICTION IS NOT AVAILABLE .................................... 16

IV.     SHOULD THE COURT DENY THE MOTION TO DISMISS, IT SHOULD
        CONSOLIDATE THIS CSAE WITH CREW FOR FURTHER PROCEEDINGS .......... 17

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Advanced Mgmt. Tech, Inc. v. F.A.A.,*

    211 F.3d 633 (D.C. Cir. 2000) ............................................... 6

*Am. Hosp. Ass'n v. Burwell,*

    812 F.3d 183 (D.C. Cir. 2016) ............................................... 16

*Armstrong v. Bush,*

    924 F.2d 282 (D.C. Cir. 1991) ............................................ 3, 11

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009)............................................................ 5

*Baptist Mem'l Hosp. v. Sebelius,*

    603 F.3d 57 (D.C. Cir. 2010)................................................. 16

*Bracy v. Gramley,*

    520 U.S. 899 (1997)........................................................... 15

*\* Cause of Action Inst. v. Pompeo,*

    319 F. Supp. 3d 230 (D.D.C. 2018) ......................................... 7

*Cause of Action Inst. v. Tillerson,*

    285 F. Supp. 3d 201 (D.D.C. 2018) ......................................... 7

*Cheney v. U.S. District Court,*

    542 U.S. 367 (2004)........................................................... 16

*\* Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.,*

    916 F. Supp. 2d 141 (D.D.C. 2013) ........................... 11, 13, 14, 17

*Competitive Enterprise Inst. v. Off. of Sci. & Tech. Policy,*

    241 F. Supp. 3d 14 (D.D.C. 2017) ..................................... 14, 15

*Crowell v. Benson*,

    285 U.S. 22 (1932) ................................................................................................ 14

*EEOC v. St. Francis Xavier Parochial School*,

    117 F.3d 621 (D.C. Cir. 1997) ............................................................................... 5

*Fla. Audobon Soc'y v. Bentsen*,

    94 F.3d 658 (D.C. Cir. 1996) (en banc) ................................................................ 6

*Garden State Broad. Ltd. P'ship v. F.C.C.*,

    996 F.2d 386 (D.C. Cir. 1993) ............................................................................... 7

*Halverson v. Slater*,

    129 F.3d 180 (D.C. Cir. 1997) ............................................................................. 12

*Hanson v. District of Columbia*,

    257 F.R.D. 19 (D.D.C. 2009) ............................................................................... 18

*Herbert v. Nat'l Acad. of Scis.*,

    974 F.3d 192 (D.C. Cir. 1992) ............................................................................... 5

*In re Cheney*,

    334 F.3d 1096 (D.C. Cir. 2003) ........................................................................... 17

*In re Cheney*,

    406 F.3d 723 (D.C. Cir. 2005) ............................................................................... 5

*Jennings v. Rodriguez*,

    138 S. Ct. 830 (2018) ........................................................................................... 14

*Judicial Watch, Inc. v. Kerry*,

    844 F.3d 952 (D.C. Cir. 2016) ......................................................................... 7, 14

*Kissinger v. Reporters Committee For Freedom of the Press*,

    445 U.S. 136 (1980).................................................................................................. 3

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

    511 U.S. 375 (1994).................................................................................................. 5

*Latif v. Obama*,

    677 F.3d 1175 (D.C. Cir. 2011).............................................................................. 15

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992)............................................................................................. 6, 7

*Motor & Equip. Mfrs. Ass'n v. Nichols*,

    142 F.3d 449 (D.C. Cir. 1998)................................................................................. 7

*Nance v. FBI*,

    845 F. Supp. 2d 197 (D.D.C. 2012)....................................................................... 15

*Norton v. S. Utah Wilderness Alliance*,

    542 U.S. 55 (2004)................................................................................................ 11

*Public Citizen v. Carlin*,

    184 F.3d 900 (D.C. Cir. 1999)............................................................................. 2, 3

*Russello v. United States*,

    464 U.S. 16 (2004)................................................................................................ 12

*Sanchez-Espinoza v. Reagan*,

    770 F.2d 202 (D.C. Cir. 1985)............................................................................... 16

*S.E.C. v. F.L.R.A.*,

    568 F.3d 990 (D.C. Cir. 2009)............................................................................... 14

*Simon v. E. Kentucky Welfare Rights Org.*,

    426 U.S. 26 (1976) ........................................................................................ 6

*Steel Co. v. Citizens for a Better Env't*,

    523 U.S. 83 (1998) ..................................................................................... 4, 5

*Steele  v. United States*,

    2015 WL 4121607 (D.D.C. June 30, 2105) ............................................... 18

*TRW Inc. v. Andrews*,

    534 U.S. 19 (2001) ...................................................................................... 12

*United States v. Armstrong*,

    517 U.S. 456 (1980) .................................................................................... 15

*United States v. Red Lake Band of Chippewa Indians*,

    827 F.2d 380 (8th Cir. 1987) ...................................................................... 13

*U.S. Parole Comm'n v. Geraghty*,

    445 U.S. 388 (1980) ...................................................................................... 7

*West v. Lynch*,

    845 F.3d 1228 (D.C. Cir. 2017) ................................................................... 6

*Wilbur v. United States*,

    281 U.S. 206 (1930) .................................................................................... 17

*Zukerman v. USPS*,

    961 F.3d 431 (D.C. Cir. 2020) ..................................................................... 5

## **Statutes**

5 U.S.C. § 706 ................................................................................................... 10

28 U.S.C. § 516 ................................................................................................. 13

v

28 U.S.C. § 519 ................................................................................................................. 13

28 U.S.C. § 1361 ............................................................................................................... 16

44 U.S.C. § 2905 ................................................................................................... 4, 11, 12

44 U.S.C. § 3105 ........................................................................................................ 3, 13

44 U.S.C. § 3106 ................................................................................................................. 4

44 U.S.C. § 3301 ................................................................................................................. 3

44 U.S.C. § 3303 ................................................................................................................. 3

44 U.S.C. § 3303a ............................................................................................................. 15

## **Regulations**

36 C.F.R. § 1220.14 ........................................................................................................... 3

36 C.F.R. § 1230.3 ........................................................................................................... 13

## **Rules**

Fed. R. Civ. P. 25 ............................................................................................................... 1

## **Other Authorities**

National Archives & Records Administration, *General Records Schedule 5.2* ........................... 15

## INTRODUCTION

Kenneth Klippenstein seeks to compel the National Archives and Records Administration and Colleen Shogan, the Archivist of the United States[1] (collectively, "NARA"), to request that the Attorney General initiate an enforcement action under the Federal Records Act to recover certain allegedly missing federal records. The specific records at issue are the text messages that were deleted when the Secret Service migrated agency-issued phones to the Microsoft Intune Mobile Device Management System from January 27, 2021 to April 1, 2021, ("the Secret Service texts"), and the text messages that were deleted when Department of Homeland Security agency-issued phones assigned to former DHS officials Chad Wolf and Ken Cuccinelli were recycled following their departures from the Department ("the DHS texts"). Those records, among others, are also at issue under the same legal theory in *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Homeland Security*, No. 22-cv-3350-TSC (D.D.C.) ("*CREW*"), currently pending before this Court, and this case warrants dismissal for the same reasons as that one.

Starting with jurisdiction: The relief Klippenstein seeks is an order requiring NARA to ask the Attorney General to initiate an enforcement action under the Federal Records Act ("FRA"). But the injury he alleges is to his ability to access the allegedly missing agency records, and he cannot demonstrate that an order requiring such a request would be likely to remedy that injury. As the declarations previously submitted by NARA, the Secret Service, and DHS in *CREW*, and resubmitted here, demonstrate concerning the records at issue here, any federal records that may have been on the agency-issued phones in question are either already in agency custody or irretrievably lost.

---

[1] The complaint names Debra Steidel Wall as a defendant in what was her official capacity as Acting Archivist of the United States at the time the complaint was filed. *See* Compl. ¶ 5, ECF 1 at 2. Colleen Shogan has since assumed the office of Archivist, and is automatically substituted as an official-capacity defendant pursuant to Fed. R. Civ. P. 25(d).

Klippenstein's claims fare no better on the merits under the Administrative Procedure Act. The enforcement duty under the FRA that he invokes applies only in cases of removal of records from agency custody, not in cases of alleged destruction of records by the agency itself. Statutory issues aside, Klippenstein's claims also fail at the starting gate because he has not adequately alleged that the relevant custodians did not follow applicable law or agency policy, as they must be presumed to have done absent specific allegations to the contrary, requiring them to preserve text messages constituting federal records.

Klippenstein also seeks the same relief under the Mandamus Act, which is not at issue in *CREW*, but which adds nothing to the case. The same defects of standing and on the merits of the FRA preclude relief as much under the Mandamus Act as under the APA. And because the APA provides adequate relief for FRA claims of the kind that Klippenstein seeks to raise here—even if it does not permit relief in this particular case—Klippenstein cannot show that there is no adequate remedy available other than mandamus.

The Court should thus dismiss the complaint for lack of jurisdiction. Should the Court determine that it has jurisdiction to consider the merits, it should nevertheless dismiss the complaint in its entirety for failure to state a claim.

If the Court determines that the complaint has adequately alleged sufficient facts to establish standing, and that it states a claim for relief on the merits, this case should be consolidated with *CREW* for all further proceedings, because the legal and factual issues in this case are all presented in that case too.

## I.        STATUTORY BACKGROUND

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Public Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999), *cert*

*denied* 529 U.S. 1003 (2000); *see* 44 U.S.C. §§ 2101-20, 2901-11, 3101-07, 3301-14. The FRA

"authorizes the head of each Federal agency to establish a records management program and to

define the extent to which documents are appropriate for preservation as agency records."

*Kissinger v. Reporters Committee For Freedom of the Press*, 445 U.S. 136, 147 (1980). Agency

heads are directed by the FRA to "establish and maintain an active, continuing program for the

economical and efficient management of the records of the agency," and "shall establish

safeguards against the removal or loss of records [they] determine[] to be necessary and required

by regulations of the Archivist." 44 U.S.C. § 3105. Additionally, the Act "provides the exclusive

means for record disposal."[2] *Id.*; *see* 44 U.S.C. § 3303(a).

>   Records covered by the FRA include:

>   all recorded information, regardless of physical form or characteristics, made or received
>   by an agency of the United States Government under Federal law or in connection with the
>   transaction of public business and preserved or appropriate for preservation by that agency
>   . . . as evidence of the organization, functions, policies, decisions, procedures, operations,
>   or other activities of the Government or because of the informational value of the data in
>   them.

44 U.S.C. § 3301(1)(A). By regulation, records under the FRA are deemed either "permanent" or

"temporary." Permanent records include any federal record that "has been determined by [the

National Archives Record Administration ("NARA")] to have sufficient value to warrant its

preservation in the National Archives of the United States." 36 C.F.R. § 1220.14 (2006).

Temporary records are any records "which have been determined by the Archivist of the United

States to have insufficient value . . . to warrant its preservation by [NARA]." *Id.*

>   The FRA also establishes an administrative enforcement scheme, consisting of two

complementary mechanisms for protecting records. *Armstrong v. Bush*, 924 F.2d 282, 294 (D.C.

---

[2] The Records Disposal Act, 44 U.S.C. § 3301, et seq., controls the disposition of records, but as
the D.C. Circuit has treated the RDA as a portion of the FRA, *see Public Citizen*, 184 F.3d at 902
(referring to "the RDA portion of the FRA"), defendants do so as well.

Cir. 1991). Under 44 U.S.C. § 2905, if the Archivist learns that federal records are being mishandled in certain material ways, then he or she may notify the relevant agency head, assist the agency head in initiating an action through the Attorney General (or initiate the action himself or herself if the agency head refuses) "for the recovery of records unlawfully removed and for other redress provided by law," and (in certain situations) notify Congress. 44 U.S.C. § 2905(a). Under 44 U.S.C. § 3106, in turn, each agency head may alert the Archivist of the material mishandling of federal records and seek to initiate an action through the Attorney General to recover records that have been unlawfully removed: "The [agency head] shall notify the Archivist of any actual, impending, or threatened unlawful removal . . . or destruction of records in the custody of the agency. . . [and] shall initiate action through the Attorney General for the recovery of records [the agency head] knows or has reason to believe have been unlawfully removed from that agency[.]" 44 U.S.C. § 3106.

## II.    PROCEDURAL BACKGROUND

Klippenstein filed this lawsuit on April 19, 2023, seeking an order requiring NARA to initiate an enforcement action under the FRA through the Attorney General over the Secret Service texts and the DHS texts. *See* Compl. Prayer for Relief, ECF 1 at 11-12. The same day, Defendants filed a notice pursuant to Local Civil Rule 40.5(b)(3) that this case is related to *CREW*, *see* ECF 4, and on April 20, 2023, Plaintiff stipulated to the related-case designation and to reassignment of the case, *see* ECF 5.

### STANDARD OF REVIEW

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). In considering a motion to dismiss for lack

of subject matter jurisdiction, including for lack of standing, the Court may consider the records generally available to it on a motion to dismiss for failure to state a claim, namely "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice," *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). "[W]here necessary," however, for a jurisdictional motion to dismiss, the Court may also consider "the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also, e.g.*, *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) ("to the extent the district court relief on the [agency] declaration" in granting a motion to dismiss for lack of standing, "it did not err.").

To survive a motion to dismiss for failure to state a claim, a plaintiff must show that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zukerman v. USPS*, 961 F.3d 431, 441 (D.C. Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

## I.   KLIPPENSTEIN LACKS STANDING BECAUSE ANY INJURY IS NOT REDRESSABLE

Federal courts are courts of limited subject-matter jurisdiction and "possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because of "the nature and limits of the judicial power of the United States," the Court must determine its jurisdiction "as a threshold matter" and may not resolve the merits of a case without first confirming its jurisdiction. *Steel Co.*, 523 U.S. at 94-95.

Article III of the Constitution restricts the jurisdiction of the federal courts to "cases" or "controversies," and the "core component of standing is an essential and unchanging part" of that requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, a Plaintiff must satisfy three elements: (1) injury-in-fact; (2) causation; and (3) redressability. *Id.* at 560-61. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

Standing doctrine's redressability requirement "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audobon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) (en banc). "The key word is 'likely.'" *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Lujan*, 504 U.S. at 561). "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation omitted); *see also, e.g.*, *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (no standing when "the complaint suggests no substantial likelihood that victory in this suit" would redress the underlying injury).

Klippenstein's claims are not redressable, because they concern potential federal records that are either already in agency custody or, if they ever existed, are no longer recoverable. The issue "may sound like one of mootness . . . but the timing makes [Plaintiff's] problem one of standing." *Advanced Mgmt. Tech., Inc. v. F.A.A.*, 211 F.3d 633, 636 (D.C. Cir. 2000). "Mootness and standing are related concepts," and "[t]he Supreme Court has characterized mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"

*Garden State Broad. Ltd. P'ship v. F.C.C.*, 996 F.2d 386, 394 (D.C. Cir. 1993) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). In this context, the substantive "difference is almost inconsequential," and cases deciding FRA claims on mootness grounds are "both factually and legally instructive" on the question of redressability. *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 207-08 (D.D.C. 2018). The difference is one of burden: as "[t]he party invoking federal jurisdiction," the plaintiff "bears the burden of establishing the[] elements" of standing, including redressability, *Lujan*, 504 U.S. at 561; once jurisdiction has been established, however, "[t]he burden of establishing mootness rests on the party that raises the issue." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998).

In the context of the FRA, "no court action can provide further relief" if "the requested enforcement action could not shake loose a few more [records]," including in cases in which the records have been "fatal[ly] los[t]." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 954-56 (D.C. Cir. 2016). To establish redressability, Plaintiff must show that "there is a 'substantial likelihood' that the Attorney General could find some [federal records]." *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 234 (D.D.C. 2018).

This Court's decision in *Cause of Action Institute v. Pompeo*, 319 F. Supp. 3d 230, is illustrative. Plaintiff in that case sought an order requiring the Secretary of State and the Archivist to request an enforcement action from the Attorney General to recover "work-related emails that [former] Secretary [of State Colin] Powell exchanged on a personal email account." *Id.* at 232. The government moved to dismiss on mootness grounds. *Id.* at 234. This Court determined that "the Government's evidence satisfie[d] th[e] high bar" for establishing mootness because, "[b]y establishing that Secretary Powell's missing emails cannot be obtained through Secretary Powell

himself, his devices, or his service provider, the Government has established the fatal loss of these federal records." *Id.* at 236.

Unlike the scenario in that case, which concerned the admitted exchange of federal records on a personal account, the allegations here concern devices that were erased and reset in the ordinary course of government operations. Even assuming that federal records existed on the phones in question, and that those records were not copied to other locations within the agency's custody prior to the phones' being reset, Klippenstein still cannot establish a substantial likelihood that federal records would be recovered because the data on those phones is either already in agency custody or has been fatally lost.

As the declarations previously submitted in *CREW* establish, data that resided on the agency phones in question during the times for which Klippenstein seeks records are either already in agency custody or no longer retrievable, from either the device itself or from the service providers. (Unlike in the case of Secretary Powell, which involved the use of a personal account, there is no reason to believe that any text messages created or exchanged on government-issued phones would be recoverable from the relevant custodian personally, and Plaintiff makes no allegations that would provide any basis for assuming otherwise.)

### A.    Secret Service

The Secret Service conducted a migration of all agency-issued iPhone and iPad devices to the Microsoft Intune Mobile Device Management System from January 27, 2021 to April 1, 2021. *See* Declaration of Gloria Armstrong ¶¶ 3, 4 (attached as Exhibit 1). Prior to the migration, the Secret Service instructed employees to preserve federal records, including text messages, stored on their phones, and provided instructions for doing so. *Id.* ¶ 3. As a result of the migration, "all data on the iPhones [was] erased," and any "iPhone data that was not backed up or otherwise preserved prior to an iPhone's enrollment in Intune was lost." *Id.* ¶ 4. Verizon, the Secret Service's

cellular phone service provider, was unable to recover copies of any text messages lost in the migration. *Id.* ¶ 5. Verizon only maintains Short Message Service (SMS) text messages for seven days after they are transmitted, and Verizon does not maintain iMessages, which are "texts, photos, or videos that are sent to another iPhone, iPad, etc. over Wi-Fi or cellular data networks." *Id.* & *id.* ¶ 3 n.2. Data lost during the Intune migration is thus not recoverable from the devices themselves or from the service providers. *Id.* ¶ 5.

The Secret Service's preservation instructions and subsequent attempts to recover any federal records that nevertheless may not have been preserved were "in keeping with the steps" NARA "expect[s] agencies to take when migrating systems and attempting to recover records." Declaration of Laurence Brewer ¶ 23 (attached as Exhibit 2).

## B.    DHS

During the relevant period, DHS contracted with WidePoint Integration Solutions Corporation to dispose of electronic cellular devices returned by departing employees or employees who received new devices. Declaration of Christopher Granger ¶ 12 (attached as Exhibit 3). "As part of the E-Cycle process, WidePoint E-Cycle signed for the relevant devices, processed them to ensure all data was sanitized from the devices, and received a certificate of data destruction as well as a report that confirmed the devices were physically destroyed or recycled." *Id.* ¶ 12 n.6.

Between November 13, 2019 and his resignation on January 11, 2021, Chad Wolf was assigned an Apple iPhone serviced by AT&T. *Id.* ¶ 12. That device was returned to DHS's Office of the Chief Information Officer ("OCIO") on or about January 11, 2021, and WidePoint disposed of the device through its E-Cycle program on or about May 15, 2021. *Id.*

Between November 13, 2019 and his resignation on January 19, 2021, Ken Cuccinelli was assigned an Apple iPhone and an Apple iPad serviced by Verizon. *Id.* ¶ 14. Those devices were

returned to OCIO on or about January 19, 2021, and WidePoint disposed of the devices through its E-Cycle program in April 2021. *Id.*

Due to a security breach that occurred in December 2020, both Wolf and Cuccinelli were assigned temporary phones, serviced by AT&T, from December 2020 until their respective resignations in January, 2021. *Id.* ¶ 20. Because of the security breach, OCIO instructed Wolf and Cuccinelli to use Signal, an encrypted end-to-end messaging service, rather than SMS or iMessage. *Id.* Wolf sent or received eight Signal messages in December 2020, and none in January 2021; DHS maintains copies of the Signal messages from his temporary device. *Id.* Cuccinelli did not send or receive any Signal messages on his temporary device. *Id.* WidePoint disposed of both temporary devices through its E-Cycle program on February 15, 2021. *Id.* ¶ 21.

OCIO has access to the iCloud accounts associated with both Wolf and Cuccinelli's devices. *Id.* ¶ 23. OCIO confirmed that no iMessages were synced to Wolf's iCloud account, and recovered approximately 1.6 GB of iMessages in Cuccinelli's iCloud account. *Id.*

OCIO also sought text message data maintained by AT&T and Verizon pertaining to Wolf and Cuccinelli. *Id.* ¶¶ 24-26. Neither provider could recover text message contents from January 2021. *Id.*

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF ON THE MERITS

Even if the Court were to determine that it has jurisdiction, the complaint must nevertheless be dismissed for failure to state a claim on the merits.

### A.    The FRA's Enforcement Duty Applies Only When Records Have Been Removed From Agency Custody

Klippenstein alleges that NARA has failed to take enforcement action required by the FRA, and seeks to challenge that alleged failure to act under the APA. *See* 5 U.S.C. § 706(1); Compl.

¶¶ 37-43, ECF 1 at 9-10. To prevail on such a claim, a plaintiff must "assert[] that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*"). That, in turn, requires the plaintiff to show that the relevant federal statute contains a "specific, unequivocal command" directing the agency to undertake a discrete action. *Id.* at 63. The FRA does impose mandatory duties on the Archivist to request enforcement action from the Attorney General in certain circumstances, *see Armstrong*, 924 F.2d at 295, but those duties apply "only to removed records," not to alleged destruction of records. *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 149 (D.D.C. 2013) ("*CREW I*"). .

The FRA provision Klippenstein relies on, 44 U.S.C. § 2905(a), provides that:

> The Archivist shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention, and <u>assist the head of the agency in initiating action through the Attorney General for recovery of records unlawfully removed and for other redress provided by law</u>. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

44 U.S.C. § 2905(a) (emphasis added).

That provision creates two distinct duties—a notification duty, and a duty to seek enforcement through the Attorney General—with distinct sets of triggering events. In the event of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records, the Archivist must notify the agency head. In the event of any unlawful removal of records—and only in that event—the Archivist must assist the agency head in initiating enforcement action through the Attorney General, or, failing action by the agency head within a reasonable time, must directly request the Attorney General to initiate an enforcement action.

Klippenstein assumes that the mandatory duty to seek enforcement through the Attorney General also applies in the case of unlawful destruction of records. That interpretation is contrary to the plain text of the statute, which requires resort to the Attorney General only when records have been "unlawfully removed." 44 U.S.C. § 2905. As a matter of ordinary usage, "removal" of records and "destruction" of records are distinct concepts; if "removal" encompassed "destruction," there would have been no need to separately list "destruction" in the first clause. Assigning distinct meaning to each term is consistent with the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

This reading likewise comports with the interpretive canon of "*expressio unius est exclusio alterius*, that is, the mention of one thing implies the exclusion of another thing." *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (internal quotation marks omitted). Here, Congress distinguished between removal and destruction in the first clause, but addressed only removal in the second clause, dealing with requests for enforcement actions by the Attorney General. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and alteration omitted).

The distinction between removal and destruction of records is also consistent with usage in another section of the FRA, and with the authoritative interpretation of NARA, the agency charged with administering the FRA. The FRA requires agencies to "establish safeguards against the removal or loss of records," and requires agencies to inform employees of "the penalties

provided by law for the unlawful *removal or destruction* of records." 44 U.S.C. § 3105 (emphasis

added). NARA's regulations likewise define removal and destruction as distinct concepts:

> Removal means selling, donating, loaning, transferring, stealing, or otherwise allowing a
> record to leave the custody of a Federal agency without the permission of the Archivist of
> the United States.
>
> Unlawful or accidental destruction (also called unauthorized destruction) means disposal
> of an unscheduled or permanent record; disposal prior to the end of the NARA-approved
> retention period of a temporary record . . .; and disposal of a record subject to a FOIA
> request, litigation hold, or any other hold requirements to retain the records.

36 C.F.R. § 1230.3(b).

Distinguishing between removal and destruction of records, and requiring recourse to the

Attorney General only in the case of removal, also makes good sense. In cases of removal, but not

in cases of destruction, involving the Attorney General creates a prospect for recovery that may

not otherwise exist: the Attorney General can sue for recovery of federal records, such as through

a civil replevin action. The Attorney General has in fact initiated such actions in the past. *See*

*United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380 (8th Cir. 1987); *cf. also, e.g.*,

*United States v. Navarro*, No. 1:22-cv-02292-CKK (D.D.C.) (civil replevin action for recovery of

materials under the Presidential Records Act). In the absence of independent litigating authority,

other federal agencies cannot take such action acting alone. *See* 28 U.S.C. § 516.

Requiring enforcement action through the Attorney General in cases of destruction of

records, in contrast, may "raise some peculiar practical and constitutional difficulties." *CREW I*,

916 F. Supp. 2d at 148. First, in many destruction cases the defendant would likely be a federal

agency itself (as Klippenstein seeks here), and the Department of Justice would, in many cases

(including those that Klippenstein seeks here) be responsible for both suing and defending the

agency in question. *See* 28 U.S.C. §§ 516, 519. Aside from the obvious practical concerns with

such an arrangement, such a reading of the FRA would also risk "tension with the constitutional

structure." *S.E.C. v. F.L.R.A.*, 568 F.3d 990, 997 (D.C. Cir. 2009) (Kavanaugh, J., concurring). "[J]udicial resolution of intra-Executive disputes is questionable under both Article II and Article III"—Article II, because "legal or policy disputes between two Executive Branch agencies are typically resolved by the President or his designee—without judicial intervention," and Article III because such disputes may not involve sufficient adversity "to constitute a case or controversy." *Id.* For such reasons, "[n]o one plausibly thinks, for example, that a federal court would resolve a dispute between the Department of Justice and, say, the Department of Defense"—but Klippenstein seeks precisely such an intra-branch dispute here. *Id.* Because the clear text of the statute avoids such constitutional questions, the Court need not resolve them. But if the Court were to determine that Klippenstein's reading of the statute is also plausible, the canon of constitutional avoidance would nevertheless favor Defendants' "fairly possible" reading of the text "by which the question may be avoided." *Jennings v. Rodriguez*, 138 S.Ct. 830, 842 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

In short, the text and structure of the FRA, its implementing regulations, and canons of construction all confirm that the Archivist has no mandatory duty to seek enforcement action from the Attorney General in cases of destruction of federal records. Nor do the D.C. Circuit's precedents "address[] the specific statutory question at issue here." *CREW I*, 916 F. Supp. 2d at 147; *see also Judicial Watch*, 844 F.2d at 175 (concerning records removed from agency custody). The complaint must therefore be dismissed for failure to state a claim.

### B. Plaintiff Has Failed To Plead Facts Sufficient To Overcome The Presumption Of Regularity

Government employees are entitled to the presumption that they comply with agency policies, absent evidence to the contrary. *Competitive Enterprise Inst. v. Off. of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 21 (D.D.C. 2017). That presumption applies "to government-produced

documents no less than to other official acts." *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011). It thus applies to agency "policy that requires all employees to forward work-related correspondence" to the official email accounts. *Competitive Enterprise Inst.*, 241 F. Supp. 3d at 21; *see also, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Ordinarily, we presume that public officials have 'properly discharged their duties'") (quoting *United States v. Armstrong*, 517 U.S. 456, 468 (1996)).

The presumption of regularity is rebuttable, but to do so requires "specific information" (or, at the motion to dismiss stage, at least specific allegations) to the contrary, not just "pure speculation." *Competitive Enterprise Inst.*, 241 F. Supp. 3d at 22 & n.2 (quoting *Nance v. FBI*, 845 F. Supp. 2d 197, 203 (D.D.C. 2012)).

At all relevant times, the FRA has required the preservation of federal records in accordance with NARA's General Records Schedules, *see* 44 U.S.C. § 3303a(d), and agency record schedules.[3] In addition, agency policy at Secret Service and DHS specifically required agency employees to copy text messages constituting federal records sent or received on an agency-provided phone to an official email account or other agency storage system. *See* Armstrong Decl. ¶ 3 (Secret Service); Granger Decl. ¶ 6 (DHS).

The complaint makes no specific allegations that any custodian failed to follow applicable records preservation requirements. In the absence of any such allegations, Klippenstein has not met his burden to overcome the presumption of regularity. The complaint thus provides no basis

---

[3] NARA's General Records Schedule 5.2 permits the destruction of "[t]ransitory records," including but not limited to "messages coordinating schedules, appointment, and events," "when no longer needed for business use." *See* https://www.archives.gov/files/records-mgmt/grs/grs05-2.pdf (last visited March 2, 2023).

for requesting an enforcement action from the Attorney General, even if the FRA mandated such action in these circumstances (which it does not).

## III.   MANDAMUS JURISDICTION IS NOT AVAILABLE

Klippenstein seeks to compel NARA to request enforcement action from the Attorney General under both the APA and the Mandamus Act, 28 U.S.C. § 1361.[4] As discussed above, he lacks standing to seek such relief because it is not substantially likely that requesting such action would recover any additional records, and because the FRA enforcement duty he invokes applies only in the case of unlawfully removed agency records, not to records allegedly destroyed by the agency itself. Those arguments apply equally to the Mandamus Act and to the APA. Mandamus relief is also unavailable for another reason, however, because Klippenstein cannot show that no other adequate remedy is available.

"A court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). As a result, "mandamus jurisdiction under § 1361 merges with the merits." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). Mandamus relief "is 'drastic'; it is available only in 'extraordinary

---

[4] Klippenstein alleges that he is entitled to "relief in the form of a writ of mandamus." Compl. ¶ 50, ECF 1 at 11. Strictly speaking, such relief is not available, because "Rule 81(b) of the Federal Rules of Civil Procedure long ago abolished the writ of mandamus in the district courts (although not in the appellate courts)." *In re Cheney*, 406 F.3d 723, 728-29 (D.C. Cir. 2005) (en banc). Nevertheless, "[t]he principles that governed the former writ now govern attempts to secure similar relief" under the Mandamus Act. *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 n.7 (D.C. Cir. 1985). "[T]he same principles" govern this Court's "'analysis of whether mandamus relief is appropriate'" as apply to the Court of Appeals' "mandamus jurisdiction under the All Writs Act." *In re Cheney*, 406 F.3d at 729 (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 390-91 (2004)).

situations'; it is hardly every granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *Id.* (quoting *In re Cheney*, 334 F.3d 1096, 1101-02 (D.C. Cir. 2003)).

Here, Klippenstein has "another available remedy in the APA," which the Complaint makes "clear" when it "requests identical relief in both claims." *CREW I.*, 916 F. Supp. 2d at 152; *see also* Compl., Prayer for Relief ¶ 2, ECF 1 at 2 (seeking an "order [to] the Archivist, in the form of injunctive and mandamus relief, to request that the Attorney General initiate action or seek other legal redress to recover any relevant deleted records"). The availability of an APA claim to enforce the FRA precludes mandamus review, even if the APA claim fails in a given case: "The fact that Plaintiff's APA claim has failed in these circumstances does not prevent the APA from being an 'adequate means to attain relief' for mandamus purposes." *CREW I*, 916 F. Supp. 2d at 152; *see also Wilbur v. United States*, 281 U.S. 206, 220 (1930) ("[T]he fact that no writ of error will lie . . . by which to review the judgment of the [agency head] [does not] furnish any foundation for the claim that mandamus may therefore be awarded."). Even if that were not so, however, the mandamus claim in this case would nevertheless still be inherently self-defeating: If the APA claim fails because the FRA enforcement duty does not extend to these facts, it necessarily follows that there is no FRA duty that could sustain the mandamus claim, but if the Court were instead to conclude that the FRA does apply here, there would be an adequate APA remedy and thus no need for mandamus.

## IV.   SHOULD THE COURT DENY THE MOTION TO DISMISS, IT SHOULD CONSOLIDATE THIS CASE WITH *CREW* FOR FURTHER PROCEEDINGS

This case presents strong grounds for dismissal.  In the even the Court denies Defendants' motion to dismiss, however, this case should be consolidated with *CREW* for further proceedings

pursuant to Fed. R. Civ. P. 42(a), which permits consolidation if "actions before the court involve a common question of law or fact." Consolidation is "particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts." *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009). Consolidation is also appropriate when it "would promote convenience and judicial economy, simplify management of the cases, . . . facilitate global resolution of the . . . claims[,] and conserve judicial resources." *Steele v. United States*, No. 14–cv–1523, 2015 WL 4121607, at *2 (D.D.C. June 30, 2015).

The questions of fact and law presented here fully overlap with those in *CREW*, which advances the same legal theory under the FRA and concerns all of the records at issue in this case. The only major distinction between the two cases is that this case seeks mandamus relief and *CREW* does not, but that makes no difference. As discussed above, the mandamus claim merely duplicates Klippenstein's (and *CREW*'s) argument under the APA and the FRA. Should the Court determine that Klippenstein has adequately alleged standing and has stated a claim for relief on the merits, consolidation would promote judicial economy and efficient resolution of these disputes.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint for lack of jurisdiction, or if the Court determines that it may exercise jurisdiction, for failure to state a claim on the merits. Should the Court deny the motion to dismiss, it should consolidate this case with *CREW* for further proceedings.

Dated: June 20, 2023                                    Respectfully submitted,

                                                        BRIAN M. BOYNTON
                                                        Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Cormac A. Early*
CORMAC A. EARLY
D.C. Bar No. 1033835
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

*Counsel for Defendants*