IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR RESPONSIBLE ETHICS IN WASHINGTON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No 1:22-cv-03350 ) |
| U.S. Department of Defense, et al. | ) ) ) ) ) ) |
| Defendants. | ) ) |

**DECLARATION OF LAURENCE BREWER**

I, Laurence Brewer, declare as follows:

1. I am currently the Chief Records Officer ("CRO") for the U.S. Government, National Archives and Records Administration ("NARA"), having been appointed to this position by the Archivist of the United States, David Ferriero, effective May 1, 2016. Prior to becoming the CRO, I served as the Director of the Records Management Operations Program and Director of Life Cycle Management at NARA. In those positions I was responsible for overseeing the scheduling and appraisal of Federal records; developing records management regulations and guidance; supporting records management training for employees across the Federal Government; and evaluating the effectiveness of records management programs in agencies. Prior to joining NARA in 1999, I was a records management consultant responsible for managing records management programs at the Environmental Protection Agency and the Virginia Department of Transportation. I hold a Bachelor of Arts degree in Government from the

College of William and Mary, and Master of Arts in Political Science from the University of Georgia.

2.	In my present position as the CRO, I lead records management throughout the Federal Government, with an emphasis on electronic records. I am responsible for issuing federal records management policy and guidance; liaisoning with the Office of Management and Budget, the U.S. Congress, the U.S. Government Chief Information Officers Council, and other stakeholders on records management issues; and serving as an ombudsman between agencies and the Archivist to ensure that NARA and the federal agencies it serves meet their respective statutory mandates and records management requirements.

3.	The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

4.	I am aware that there is currently a lawsuit against the Defense Department, Army, Secret Service, Department of Homeland Security and the National Archives and Records Administration (NARA) challenging the agencies' and NARA's compliance with the Federal Records Act (FRA) concerning text messages and management of government-issued cell phones.

**Background**

5.	The FRA requirements for federal agencies are found at 44 U.S.C. Chapter 31, titled "Records Management by Federal Agencies." Under the FRA, agency heads are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101. Agency heads must "establish and maintain an active, continuing

program for the economical and efficient management of the records of the agency." 44 U.S.C. § 3102. Therefore, agency heads are responsible for ensuring that there is adequate and proper documentation of agency activities, a program of management to ensure effective controls over the creation, maintenance and use of records in the conduct of the agency's current business, and compliance with NARA guidance and regulations and compliance with other sections of the FRA that give NARA the authority to promulgate regulations, guidance, and records disposition authority to federal agencies.[1]

6. Pursuant to the FRA, agencies must ensure the proper management of all federal records. The FRA requires that the disposition of all federal records be approved by the Archivist of the United States. 44 U.S.C. §§ 3303 & 3314; *see also* 36 C.F.R. § 1225.10. In order to efficiently manage the disposition process, agencies must create records schedules, subject to NARA's approval, to govern all their records. 44 U.S.C. § 3303(3); 36 C.F.R. §§ 1225.10-1225.26. Records schedules will classify records as either permanent, in which case the records are eventually transferred to NARA for preservation, *see* 36 CFR § 1225.14, or temporary, in which case the records may be destroyed after a set period of time. *See id.* § 1225.16. NARA also issues a number of General Records Schedules applicable for records common to most agencies. 44 U.S.C. § 3303a(d). Agencies have the responsibility to properly implement records schedules.

7. The FRA establishes an administrative enforcement scheme to address potential violations of the FRA. Under chapter 31, an agency is required to notify NARA if it learns of

---

[1] Not all documents or items qualify as federal records; federal records include only those materials that are "appropriate for preservation . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them." 44 U.S.C. § 3301.

"any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency[.]" 44 U.S.C. § 3106(a). NARA has issued implementing regulations, at 36 C.F.R. Part 1230. Allegations are received from a variety of sources, such as media reports, private citizens, and federal agencies. Formal reports from agencies following their investigation into these allegations are generally submitted to me by the individual authorized to sign records schedules, which for most agencies is the Agency Records Officer, although sometimes it is the agency's Senior Agency Official for Records Management. If NARA learns about an alleged incident before the agency has reported it, we will promptly notify the agency and request information similar to what is typically included in an agency's formal report.

8. In accordance with our regulations, if NARA opens a case based on an allegation, the agency must provide us with a response. If the agency verifies that the allegation is founded, the incident report should describe the records, the circumstances in which the unauthorized action took place, and the corrective steps being taken to properly manage the records in the future. An agency must provide the following information to NARA: (1) A complete description of the records with volume and dates if known; (2) The office maintaining the records; (3) A statement of the exact circumstances surrounding the removal, defacing, alteration, or destruction of records; (4) A statement of the safeguards established to prevent further loss of documentation; and (5) When appropriate, details of the actions taken to salvage, retrieve, or reconstruct the records. 36 C.F.R. § 1230.14(a).

9. The FRA is designed to ensure that NARA is made aware of both the potential and actual loss of records so that NARA can assist the agencies in addressing the situation moving forward. The goal of this process is to ensure that reasonable efforts are taken to recover

improperly removed or destroyed records, to the extent necessary, appropriate and achievable, and that the circumstances that may have led to the loss of federal records are corrected and are not repeated. As a result of this process, agencies are better able to ensure that they protect and manage their records.

10. To that end, the FRA's administrative enforcement scheme and the reporting process detailed in NARA's regulations are designed to provide NARA with sufficient information to provide the oversight and guidance to the agency that is necessary for the agency to comply with the records management requirements of the FRA. We generally communicate with agencies by letter, and agencies often—but are not required to—attach supporting documentation (such as reports, memos, emails, and other types of correspondence). These communications are the basis for NARA's determination as to whether an agency's efforts to recover improperly removed or destroyed records were appropriate and sufficient. When NARA determines that an agency no longer has any reason to believe that records still exist to be recovered, NARA considers the issue resolved and determines that there is nothing further to be done to recover those records. The FRA does not require that these communications meet a legal, evidentiary standard of reliability or proof.

11. It is normal that NARA relies on agency representations as truthful and sufficient in closing out allegations of unauthorized destruction or removal of Federal records. It is also not out of the ordinary for NARA to rely on an agency representation that in turn relies on a representation from a former employee, outside entity, or other third party. While we may ask follow up questions or engage with an agency further to ensure policies and procedures are in place to prevent such events from occurring again, NARA assumes that the representations of

agencies and third parties are made in good faith and does not routinely demand evidence from them in a form that would be admissible in court.

### Defense Department's Correspondence with NARA

12. On August 5, 2022, I sent a letter to the Defense Department inquiring about the potential loss of text messages from the government-issued phones of former acting Secretary of Defense Chris Miller, Chief of Staff Kash Patel, and General Counsel Paul Ney.

13. The Defense Department responded to NARA in writing on October 24, 2022. I understand it has conducted several searches as a result of this litigation, and I have reviewed the Declaration of Roger Greenwell, the Chief Information Officer for the Defense Information Systems Agency (DISA) within the Defense Department.

14. I have reviewed the steps taken by the Defense Department including its explanation that the phones were wiped and that the text message provider does not retain a copy of the messages. In doing so, I believe that the Defense Department has taken all reasonable steps necessary to recover federal records and that a referral to the Justice Department would not likely result in the recovery of any federal records.

15. I noted that the Defense Department issued a new policy on August 3, 2022 to ensure all data, including text messages, is captured and saved on DOD mobile devices when they are turned in. This is in keeping with the sort of remediation we expect of agencies to guard against future loss of records.

### Department of the Army's Correspondence with NARA

16. On August 5, 2022, I sent a letter to the Department of the Army inquiring about the potential loss of text messages from the government-issued phones of former Secretary of the Army Ryan McCarthy, Chief of Staff General James McConville, Director of Army Staff

Lieutenant General Walter Piatt, and former General Counsel James McPherson.

17. The Department of the Army responded to NARA on October 25, 2022. I understand it has conducted several searches as a result of this litigation, and I have reviewed the Declaration of Paul Deagostino, the Senior Counsel, Chief Attorney and Legal Services, Office of the Administrative Assistant to the Secretary of the Army (AASA).

18. I understand, based on the Army's declaration that the phones of Mr. McCarthy, General McConville, and Lt. Gen. Piatt were reprovisioned before any information could be recovered from them. I understand reprovisioning involves an irreversible wiping of the device such that it could be issued to a new user, and it would no longer contain any information from the prior user.

19. I understand that Mr. McPherson's phone was located by the Army, and there were several attempts made to access it, but nothing was successful.

20. I understand that the Army will comply with the Department-wide policy referenced in paragraph 15 above to ensure records are captured on a going forward basis.

**Secret Service's Correspondence with NARA**

21. On July 19, 2022, I sent a letter to the United States Secret Service inquiring about the potential loss of text messages from the government-issued phones from January 5 and 6, 2021.

22. On July 22, 2022, the Secret Service responded to NARA indicating the Department of Homeland Security Office of Inspector General directed the Secret Service to cease investigation into the collection and preservation of text messages, and that they would comply with the request.

23.     I have reviewed the declaration of Gloria R. Armstrong, the Assistant Director for the Office of Professional Responsibility at the Secret Service. I understand that prior to my July 19, 2022 letter, the Secret Service had previously determined additional text messages were not recoverable due to a phone migration and that the cell phone provider did not retain the messages. Ms. Armstrong stated that in January 2021, all employees were notified there would be a phone migration which would erase all data on the devices. Employees were instructed to verify whether there were iMessages on their devices which would need to be perceived and provided instructions on how to do so. I further understand that the service provider does not maintain iMessages and only maintains SMS messages for 48 hours. This is in keeping with the steps we expect agencies to take when migrating systems and attempting to recover records.

**Homeland Security's Correspondence with NARA**

24.     On August 1, 2022, I sent a letter to the Department of Homeland Security inquiring about the potential loss of text messages from the government-issued phones belonging to former acting Secretary Chad Wolf and former acting Deputy Secretary Ken Cuccinelli.

25.     On September 30, 2022, DHS responded to NARA indicating it had reviewed its electronic message preservation policies and practices, and it had found no evidence of unauthorized destruction.

26.     I have reviewed the declaration by Christopher Granger, the Executive Director for Information Technology Operations at DHS. I understand that During the period that Mr. Wolf and Mr. Cuccinelli served as senior officials, DHS-HQ did not monitor the use of text messaging and relied upon employee compliance with its policies, training, and guidance to ensure DHS compliance with the FRA. I further understand that DHS did not automatically back

up any text messages on government-issued devices.

27. I understand that all three DHS officials at issue were issued Apple devices, and that DHS was able to recover iMessages from former DHS official Kenneth Cuccinelli's iCloud account. No iMessages were able to be recovered from former DHS official Chad Wolf's iCloud account. However, eight Signal messages were maintained by DHS from a phone issued to Mr. Wolf. Billing records indicated that Mr. Wolf did use SMS texting on his phone, but the service provider stated those records were no longer available. Billing records for Mr. Cuccinelli were no longer maintained by the provider.

28. DHS further indicated that Randolph Alles, still employed by DHS, has stated while he did text using his current and prior government-issued phones, those text messages were logistical in nature and would not be appropriate for preservation beyond a transitory period.

29. DHS indicated that in 2022 it provided political appointees specific training prior to the presidential transition on their records management responsibilities, which covered preservation of text messages. DHS has also changed its recordkeeping plans to implement preservation of electronic cellular devices and/or fully accessible backups of electronic cellular devices issued to senior DHS officials who create permanently valuable records as well as others. DHS also requires all employees and political appointees to document their records retention activities prior to, and in connection with, any event that would lead to the factory reset of their electronic cellular devices.

30. Based on the information provided by DHS, I believe that the agency has implemented the policy changes necessary to guard against a future loss of records. I also believe DHS has taken reasonable steps to ensure the recovery of federal records from the government

issued phones.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of March, 2023.

_____
Laurence Brewer
Chief Records Officer for the U.S. Government
National Archives and Records Administration
College Park, Maryland