IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>*Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants.* | Case No. 22-cv-03350-TSC |

**DECLARATION OF CHRISTOPHER GRANGER**
**U.S. DEPARTMENT OF HOMELAND SECURITY**

I, Christopher Granger, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I am the Executive Director for Information Technology Operations with the U.S. Department of Homeland Security ("DHS"), Office of the Chief Information Officer ("OCIO"). I have held this position since January 1, 2023. The Information Technology Operations Directorate ("ITOD") is responsible for managing the daily operational activities of DHS' information technology infrastructure and aligning the infrastructure with DHS' mission, objectives, organizational standards, core principles, and target information technology goals.

**INTRODUCTION**

2. Beginning on November 13, 2019 to the date of his resignation on January 11, 2021, Chad F. Wolf was the Acting Secretary for DHS.

3.     Beginning on November 13, 2019 to the date of his resignation on January 19, 2021, Kenneth T. Cuccinelli was the Senior Official Performing the Duties of the Deputy Secretary for DHS.

4.     Beginning on July 8, 2019 and continuing to the present, Randolph D. "Tex" Alles serves as the Deputy Under Secretary for Management for DHS.

5.     The Management Directorate for DHS provides the organizational framework that enables DHS to achieve its mission.[1]  The Management Directorate includes the Office of the Chief Financial Officer, the Office of the Chief Human Capital Officer, and so forth. Most notably, for purposes of this Declaration, the Management Directorate includes OCIO. OCIO is responsible for implementing the programs necessary to align DHS' Information Technology personnel, resources, and assets.[2]  OCIO serves as a leader for the DHS Federal Information Technology ("IT") community and provides the infrastructure, governance, and oversight to deliver mission capabilities securely, efficiently, and effectively.  The ITOD for DHS manages the daily operational and engineering activities of DHS Headquarters ("DHS-HQ") technology such as the wide area network backbone, computer network devices, and mobile assets.

6.     DHS-HQ issues electronic cellular devices to many of its employees.  During the period that Mr. Wolf and Mr. Cuccinelli served as senior officials, DHS-HQ did not monitor the use of text messaging and relied upon employee compliance with its policies, training, and guidance to ensure DHS compliance with the Federal Records Act ("FRA"). DHS Management Policy Directive 141-03 served as the primary guidance for employees and

---

[1] https://www.dhs.gov/management-directorate
[2] https://www.dhs.gov/office-chief-information-officer

their obligation to preserve federal records created via chat, text, or instant messaging. Nonetheless, all DHS employees, senior officials, and political appointees alike were required to take annual records management training to further familiarize themselves with their obligation to preserve records created during the course of their work activities.

7. During the period that Mr. Wolf and Mr. Cuccinelli served as senior officials, DHS-HQ did not automatically back up text messages, whether sent/received through short message service ("SMS"), multimedia messaging service ("MMS"), iMessage, or any other kind of service.[3] As a general matter, DHS-HQ would perform a factory reset (i.e., "wipe") of all electronic cellular devices when an employee left DHS-HQ and/or when an employee received a new device. DHS-HQ did not have a policy or procedure to backup the contents of electronic devices prior to any factory reset.

8. Since August 2022, DHS has started to preserve electronic cellular devices and/or fully accessible backups of electronic cellular devices issued to Capstone employees, members of the Senior Executive Service (and equivalent), and political appointees.[4] Since November 2022, DHS has required all employees and political appointees to document their records retention activities prior to, and in connection with, any event that would lead to the factory reset of their electronic cellular devices.

9. On or about December 15, 2022, the DHS Records Officer provided a briefing

---

[3] https://www.archives.gov/records-mgmt/rcs/schedules/departments/department-of-homeland-security/rg-0563/grs-6-1-0563-2018-0001-c.pdf

[4] Capstone refers to an approach approved by the U.S. National Archives and Records Administration ("NARA") for electronic mail, whereby all business emails of certain specified senior officials, i.e., "Capstone Officials", are designated federal records and will not be deleted. Further details regarding DHS's implementation of the Capstone approach may be found in DHS Directive 142-03-001 Rev. 00, ELECTRONIC MAIL MAINTENANCE, Issue Date 07/27/2020. On January 5, 2023, NARA approved federal agencies' use of the Capstone approach for the retention and preservation of electronic messages. *See* NARA Bulletin 2023-02.

called "DHS Presidential Transition" at a political appointee town hall to inform political appointees of their records management responsibilities prior to departure. This briefing addressed electronic messages, including email, instant messages, and texts and recommended that all political appointees contact their relevant Records Officer two weeks prior to departure. This briefing directed political appointees to a website specifically designed to provide additional information. This online reference page included a specific "how to" guidance sheet instructing political appointees about the practice of preserving text messages.

10. On or about August 1, 2022, the Director of Records and Information Management for DHS, and the Chief Information Officer and Senior Agency Official for Records Management for DHS, received a letter via email from the Chief Records Officer for the U.S. National Archives and Records Administration ("NARA"). This letter states, among other things, that NARA "has been made aware of the potential loss of text messages within [DHS], including the text messages of former acting Secretary Chad Wolf and former acting Deputy Secretary Ken Cuccinelli during the January 2021 'reset' of government mobile phones."

11. DHS-HQ, unlike the U.S. Secret Service, did not begin a system migration in January 2021. DHS-HQ, likewise, has had no system-wide "reset" or "migration" of government mobile phones as referenced in NARA's letter, dated August 1, 2022.

## RELEVANT ELECTRONIC CELLULAR DEVICES

### a. Chad F. Wolf, Acting Secretary for DHS

12. From the date that Mr. Wolf stepped into his role as Acting Secretary on November 13, 2019 to the date of his resignation on January 11, 2021, Mr. Wolf was assigned an Apple iPhone and an Apple iPad. On or about January 11, 2021, Mr. Wolf caused the

electronic cellular devices issued to him to be returned to OCIO.[5]  Thereafter, OCIO retained Mr. Wolf's iPhone for several months before wiping it in connection with its return to WidePoint Integrated Solutions Corporation ("WidePoint"), a DHS contractor.  WidePoint subsequently disposed of Mr. Wolf's iPhone on or about May 15, 2021 through WidePoint's E-Cycle program.[6]

13. Mr. Wolf has not designated any messages from the above-described electronic cellular devices as federal records warranting preservation.

### b. Kenneth T. Cuccinelli, Senior Official Performing the Duties of the Deputy Secretary for DHS

14. From the date that Mr. Cuccinelli stepped into his role as Senior Official Performing the Duties of Deputy Secretary for DHS on November 13, 2019 to the date of his resignation on January 19, 2021, Mr. Cuccinelli was assigned an Apple iPhone and an Apple iPad serviced by Verizon.  On or about January 19, 2021, Mr. Cuccinelli caused the electronic cellular devices issued to him to be returned to OCIO.  Thereafter, OCIO retained these devices for several months before wiping them in connection with their return to WidePoint.  WidePoint subsequently disposed of Mr. Cuccinelli's devices through WidePoint's E-Cycle program in April 2021.

15. Mr. Cuccinelli has not designated any messages from the above-described DHS-issued electronic cellular devices as federal records warranting preservation.  Mr.

---

[5] By default, the Apple devices issued by DHS to its employees are not set up to perform device backups to the iCloud.  During the period that Mr. Wolf and Mr. Cuccinelli served as political appointees within DHS, Apple device users were able to manually enable iMessage sync to the iCloud from their devices.

[6] As part of the E-Cycle process, WidePoint E-Cycle signed for the relevant devices, processed them to ensure all data was sanitized from the devices, and received a certificate of data destruction as well as a report that confirmed the devices were physically destroyed or recycled.

Cuccinelli, did however, text a few items, such as a photograph of fencing near the Capitol to his DHS email in January 2021. Forwarding text messages from a work phone to a work email account is an acceptable way to preserve text messages.

16. Sometime after Mr. Cuccinelli's resignation, DHS became aware that Mr. Cuccinelli used his personal phone at times to exchange text messages with DHS employees. Mr. Cuccinelli provided some information about the use of his personal phone for conducting DHS business on December 7, 2021 to Congress.[7] During this testimony, Mr. Cuccinelli stated that, although he has since upgraded to a new personal phone, he has not consciously kept or deleted old text messages as he upgraded to a new phone.[8] Mr. Cuccinelli further stated that he would be willing to search for pertinent text message if provided search parameters.[9]

   c. **Randolph D. "Tex" Alles, Deputy Under Secretary for Management for DHS**

17. From the date that Mr. Alles stepped into his role as Deputy Under Secretary for Management on July 8, 2019 to the present, Mr. Alles has been assigned one Apple iPhone and one Apple iPad serviced by Verizon.

18. On February 9, 2022, Mr. Alles received a new Apple iPhone. Before the return of his previously issued Apple iPhone, Mr. Alles performed a factory reset of the iPhone. Due to an investigation initiated by the Office of Inspector General ("OIG") for DHS, OCIO sent the previously issued iPhone to OIG on or about August 17, 2022.

19. Mr. Alles has not designated any text messages from the above-described electronic cellular devices as federal records warranting preservation. Mr. Alles has explained that, while he has sent and received text messages on his DHS phones, and possibly even on

---

[7] https://archive.org/details/january-6th-committee-witness-testimony-20211207-ken-cuccinelli
[8] *Id.*
[9] *Id.*

his iPad, his text messages are generally limited to exchanging logistical information such as the location of a government building or seeking technology related assistance. Mr. Alles has further explained that texting is not an effective way to discuss policies and substantive matters; therefore, he views the ability to send and receive text messages as having limited functionality.

### d. Temporary Electronic Cellular Devices

20. Beginning in December 2020 through to their respective resignations, Mr. Wolf and Mr. Cuccinelli had the use of temporary electronic cellular devices serviced by AT&T due to a security breach that occurred in December 2020.[10] Because of this security breach, OCIO instructed Mr. Wolf and Mr. Cuccinelli to use these temporary devices to send instant messages via Signal, an encrypted end-to-end messaging service, rather than via SMS/MMS or iMessage. Mr. Wolf sent/received eight Signal messages in December 2020 but sent/received none in January 2021. Mr. Cuccinelli sent/received no Signal messages for the period that he had a temporary device available to him. DHS maintains copies of the Signal messages from Mr. Wolf's temporary device.

21. WidePoint disposed of Mr. Wolf and Mr. Cuccinelli's temporary iPhones through WidePoint's E-Cycle program on or about February 15, 2021.

### EFFORTS TO LOCATE AND RECOVER TEXT MESSAGES

22. In or around January 2021, the Special Missions/Executive Leadership Support Team ("ELST") physically examined the temporary electronic cellular devices issued to Mr.

---

[10] Mr. Alles was also issued a temporary electronic cellular device. However, as noted in paragraph 19, Mr. Alles limited his use of text messaging to exchanging basic logistical information and requests for assistance. WidePoint disposed of Mr. Alles' temporary iPhone through WidePoint's E-Cycle program on or about January 25, 2022.

Wolf and Mr. Cuccinelli upon their return to OCIO. The Special Missions/ELST reviewed these devices because of the specific purpose (i.e., security breach) behind the issuance of the devices.

23. In or around July 2022, OCIO attempted to gain access to the iCloud accounts associated with Mr. Wolf and Mr. Cuccinelli. In or around August 2022, OCIO gained access to Mr. Wolf's iCloud account and verified that no iMessages were synced to his account. In or around August 2022, OCIO gained access to Mr. Cuccinelli's iCloud account and discovered approximately 1.6 GB of iMessages in Mr. Cuccinelli's iCloud account. DHS-HQ maintains a copy of these iMessages.

24. In or around July 2022, OCIO sought text messaging details from AT&T and Verizon for the cellular accounts associated with Mr. Wolf and Mr. Cuccinelli.

25. In or around July 2022, AT&T, which serviced the electronic cellular devices assigned to Mr. Wolf and the two temporary electronic cellular devices assigned to Mr. Wolf and Mr. Cuccinelli, produced non-content text messaging details for the period of January 2021. These records show that throughout January 2021 Mr. Wolf appears to have sent/received several text messages on his regularly issued electronic cellular device.

26. On or about August 12, 2022, Verizon, which serviced the electronic cellular devices assigned to Mr. Cuccinelli, responded to OCIO's request for text messaging details. Verizon issued a letter, stating "in response to [OCIO's] inquiry regarding preservation guidelines for text message details from December 2020 through January 2021 timeframe . . . . Verizon's ordinary retention period for customer text message details . . . is no longer than one rolling calendar year." OCIO has not received any content or non-content text messaging details for the electronic cellular devices associated with Mr. Cuccinelli.

## CONCLUSION

27.    To the extent that Mr. Wolf and Mr. Cuccinelli may have had text messages satisfying the definition of federal record within the meaning of the FRA, OCIO has undertaken all reasonable and comprehensive efforts to recover those text messages. OCIO has not attempted to recover text messages from Mr. Alles because OCIO has no reason to believe that any of his text messages are federal records.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on this __ day of March, 2023.

_Digitally signed by CHRISTOPHER J GRANGER_
_Date: 2023.03.01 15:08:04 -05'00'_

Christopher Granger
Executive Director
Information Technology Operations
Office of the Chief Information Officer
U.S. Department of Homeland Security