**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KLIPPENSTEIN,

          Plaintiff,

    v.

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION, *et al.*

          Defendants.

Case No. 23-cv-1083-TSC

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR TO CONSOLIDATE

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.     KLIPPENSTEIN LACKS STANDING BECAUSE ANY INJURY IS NOT
       REDRESSABLE............................................................................................................2

II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF ON THE MERITS .....8

       A.     The FRA's Enforcement Duty Applies Only When Records Have Been
              Removed From Agency Custody............................................................................8

       B.     Plaintiff Has Failed To Plead Facts Sufficient To Overcome The Presumption
              Of Regularity .....................................................................................................13

III.   MANDAMUS JURISDICTION IS NOT AVAILABLE .................................................15

IV.    THIS CASE IS MATERIALLY IDENTICAL TO *CREW*, AND SHOULD BE
       CONSOLIDATED WITH *CREW* IN THE EVENT THE COURT DENIES THE
       MOTION TO DISMISS .............................................................................................17

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Am. Hosp. Ass'n v. Burwell*,

    812 F.3d 183 (D.C. Cir. 2016) ................................................................. 15

*Armstrong v. Bush*,

    924 F.2d 282 (D.C. Cir. 1991) ........................................................... 11, 12

*Atlantisgas Corp. v. Nisource, Inc.*,

    290 F. Supp. 2d 34 (D.D.C. 2003) .............................................................. 7

*Baptist Mem'l Hosp. v. Sebelius*,

    603 F.3d 57 (D.C. Cir. 2010) .................................................................... 15

*Bracy v. Gramley*,

    520 U.S. 899 (1997) ................................................................................. 13

*Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*,

    148 F.3d 1080 (D.C. Cir. 1998) .................................................................. 7

* *Cause of Action Inst. v. Pompeo*,

    319 F. Supp. 3d 230 (D.D.C. 2018) .................................................. 2, 3, 4

*Citizens for Resp. & Ethics in Washington v. Exec. Office of the President*,

    587 F. Supp. 2d 48 (D.D.C. 2008) ........................................................... 16

* *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*,

    916 F. Supp. 2d 141 (D.D.C. 2013) ............................................... 9, 10, 15

*Clayton v. D.C.*,

    36 F. Supp. 3d 91 (D.D.C. 2014) .............................................................. 17

*Competitive Enterprise Inst. v. Off. of Sci. & Tech. Policy*,

    241 F. Supp. 3d 14 (D.D.C. 2017) ............................................................ 13

*Competitive Enterprise Inst. v. U.S. EPA*,

    67 F. Supp. 3d 23 (D.D.C. 2014) ........................................................................ 11

*Erlenbaugh v. United States*,

    409 U.S. 239 (1972) ............................................................................................ 10

*Erwin-Simpson v. AirAsia Berhad*,

    985 F.3d 883 (D.C. Cir. 2021) ............................................................................. 7

*Ex parte McCardle*,

    7 Wall. 506 (1868) ............................................................................................. 16

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,

    529 F.3d 1087 (D.C. Cir. 2008) ........................................................................... 7

*GTE New Media Servs. Inc. v. BellSouth Corp.*,

    199 F.3d 1343 (D.C. Cir. 2000) ........................................................................... 6

*Judicial Watch, Inc. v. Kerry*,

    844 F.3d 952 (D.C. Cir. 2016) ............................................................................. 2

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*,

    219 F. Supp. 2d 20 (D.D.C. 2002) ..................................................................... 16

*Judicial Watch, Inc. v. Pompeo*,

    744 Fed. App'x 3 (D.C. Cir. 2018) ...................................................................... 4

*Judicial Watch, Inc. v. Tillerson*,

    293 F. Supp. 3d 33 (D.D.C. 2017) ....................................................................... 4

*Kissinger v. Reporters Committee For Freedom of the Press*,

    445 U.S. 136 (1980) ............................................................................................ 11

*Latif v. Obama*,

   677 F.3d 1175 (D.C. Cir. 2011) ............................................................... 13

*Linda R.S. v. Richard D.*,

   410 U.S. 614 (1973) ................................................................................... 4

*Lujan v. Defs. of Wildlife*,

   504 U.S. 555 (1992) ................................................................................... 2

*Mary Ferrell Foundation, Inc. v. Biden*,

   2023 WL 4551066 (N.D. Cal. July 14, 2023) ............................................ 9

*Motion Picture Ass'n of Am., Inc. v. FCC*,

   309 F.3d 796 (D.C. Cir. 2002) ................................................................. 10

*NBC-USA Housing Inc., Twenty-Six v. Donovan*,

   774 F. Supp. 2d 277 (D.D.C. 2011) ........................................................... 4

*Steel Co. v. Citizens for a Better Env't*,

   523 U.S. 83 (1998) ................................................................................... 16

*United States v. Navarro*,

   --- F. Supp. 3d ---, 2023 WL 2424625 (D.D.C. March 9, 2023) .............. 12

*United States v. Texas*,

   143 S. Ct. 1964 (2023) ............................................................................. 16

## **Statutes**

18 U.S.C. § 641 ............................................................................................ 11

44 U.S.C. § 2905 ......................................................................... 8, 9, 10, 11, 19

44 U.S.C. § 3106 ..................................................................................... 9, 10

**Regulations**

36 C.F.R. § 1230.16 ................................................................................................... 14

**Rules**

Fed. R. Civ. P. 42 ..................................................................................................... 17

L. Civ. R. 40.5 ..................................................................................................... 17, 18

**Other Authorities**

National Archives & Records Administration, *General Records Schedule 5.2* .......................... 13

U.S. House of Representatives, House Conference Report No. 98-1124, 1984 U.S.C.C.A.N. 3894

    (Oct. 1 1984) ..................................................................................................... 11

## INTRODUCTION

As Defendants set out in their opening brief, this case raises the same legal issues that are currently before this Court in *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Homeland Security*, No. 22-cv-3350-TSC (D.D.C.) ("*CREW*"), and concerns factual allegation that are all at issue in that case too. It therefore warrants dismissal for the same reasons Defendants advance in *CREW*, and if the Court denies the motion to dismiss, it should consolidate the two cases for further proceedings. Klippenstein's additional arguments against dismissal or consolidation beyond those raised in *CREW* are not persuasive.

To begin, Klippenstein cannot show that the relief he seeks would likely redress his alleged injuries, because all of the federal records at issue are either already in agency custody or have been fatally lost. Klippenstein's suggestions that the Department of Justice ("DOJ") could bring coercive legal pressure to bear against third-party recipients of allegedly deleted text messages is meritless, when he can identify no legal basis that would justify the use of such methods. His suggestion that DOJ could employ unspecified "forensic tools" to locate additional records is likewise misguided, when Klippenstein provides no reason to believe that any such tools exist that would be capable of recovering the records at issue His request for jurisdictional discovery, based on nothing but speculation, does not absolve his failure to meet his pleading burden on redressability.

On the merits, the Federal Records Act ("FRA") does not require Defendants to seek action from the Attorney General in the case of federal records that have allegedly been destroyed rather than removed, as is the case here. The recent out-of-circuit decision Klippenstein relies on to the contrary is not persuasive and does not make sense of the statutory language. Even if the FRA cause of action he invokes were to apply, moreover, Klippenstein has failed to overcome the presumption of regularity that the government employees at issue here followed their preservation

1

duties under the FRA, because he cannot connect his generalized allegations of impropriety to any specific failure on the part of any specific custodian.

Klippenstein's mandamus claim—the only aspect of this case that is not also present in *CREW*—warrants immediate dismissal, because Klippenstein admits that he has adequate alternative relief available under the Administrative Procedure Act ("APA"). That admission precludes mandamus jurisdiction here.

Finally, Klippenstein resists consolidation with *CREW* on the basis that he requested a broader investigation of potential FRA violations at the Department of Homeland Security than is at issue in *CREW*. Whatever the scope of the investigation Klippenstein may have requested, however, he seeks to enforce a duty under the FRA to seek an enforcement action through the Attorney General, and that duty only applies when a specific actual or threatened FRA violation comes to Defendants' attention. Klippenstein does not allege any such specific violations beyond what is already raised in *CREW*, and thus offers no basis to keep the two cases separate in the event the Court denies the motions to dismiss in each case.

## ARGUMENT

## I.   KLIPPENSTEIN LACKS STANDING BECAUSE ANY INJURY IS NOT REDRESSABLE

Klippenstein does not dispute that, as the party invoking federal jurisdiction, he bears the burden of establishing standing, including redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Nor does he dispute that redressability, in an FRA case such as this one, requires a showing that "there is a 'substantial likelihood' that the Attorney General could find some [federal records]," *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 234 (D.D.C. 2019) ("*Cause of Action II*"), or that redress is not possible in cases of "fatal loss" of agency records, *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016).

Likewise, Klippenstein does not contest that *Cause of Action II* sets out the correct standard for determining whether there has been such a fatal loss, namely that "missing [records] cannot be obtained through [the government employee] himself, his devices, or his service provider." *Cause of Action II*, 319 F. Supp. 3d at 236.

Klippenstein's contention that he has demonstrated redressability because of his request for "other legal redress" beyond an enforcement action through the Attorney General is thus a red herring. Pl's Opp. at 3. Whether through an enforcement action or through the pursuit of "other legal redress," Klippenstein bears the burden of adequately alleging that the Attorney General would be substantially likely to recover additional federal records.

Plaintiff suggests two possible additional avenues for recovering further records that he contends would be open to DOJ: First, he suggests that DOJ may be able to "recover the messages from the third parties with whom they were exchanged"; and second, he suggests that DOJ could employ "the wide panoply of forensic technical tools that the Federal Bureau of Investigation regularly uses to recover data from phones which have been reset." Pl's Opp. at 5-6. Neither suggestion satisfies Plaintiff's burden on redressability.

First, Klippenstein's suggestion of sending DOJ to obtain copies of text messages from third parties does not stand up. To begin, he cites no authority under the FRA requiring agencies or the Attorney General to search third parties, and fails to contest the *Cause of Action II* standard, which does not require searching third parties. As this court put it—and as the D.C. Circuit affirmed—in rejecting an argument under the FRA to require searches of third parties, "[t]he Court of Appeals may have asked the Government to 'shak[e] the tree harder' for more emails, but it never suggested that the FBI must shake every tree in every forest, without knowing whether they

are fruit trees." *Judicial Watch, Inc. v. Tillerson*, 293 F. Supp. 3d 33, 47 (D.D.C. 2017) ("*Judicial Watch III*") (quoted in *Judicial Watch, Inc. v. Pompeo*, 744 Fed. App'x 3, 4 (D.C. Cir. 2018)).

In any case, Klippenstein does not offer any reason to believe that pursuing third parties would be "substantially likely" to uncover additional records. He claims that recovery "would be well within DOJ's capabilities but arguably beyond DHS's legal authorities." Pl's Opp. at 5. Plaintiff does not further specify what legal authorities he has in mind, but presumably he means DOJ's coercive and prosecutorial authorities. That suggestion does not hold water. Klippenstein has not offered any basis on which DOJ could invoke those authorities against third parties who merely received text messages from government officials, and none is apparent. *See, e.g.*, *Judicial Watch III*, 293 F. Supp. 3d at 44 (rejecting argument for subpoena to third-party service providers when "plaintiffs offered no authority that would require the service providers to conduct [the requested] search or allow Government to do so."). In any case, as the Supreme Court has recently reaffirmed, "a party 'lacks a judicially cognizable interest in the prosecution . . . of another.'" *United States v. Texas*, 143 S. Ct. 1964, 1970 (2023) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Second, Klippenstein suggests that DOJ could use "the wide array of forensic technical tools that the Federal Bureau of Investigation regularly uses to recover data from phones which have been reset." Pl's Opp. at 6. That proposal fares no better than his first. Klippenstein declines to cite a single example of any such forensic tool, or to provide any specific information about the capabilities of such tools. *See Cause of Action II*, 319 F. Supp. 3d at 235 (dismissing argument as "speculative" that "forensic searches" might recover additional emails from former Secretary of State Colin Powell, when plaintiffs offered "no evidence . . . apart from the fact that forensic searches discovered emails in former Secretary of State Hillary Clinton's case").

4

Moreover, as Defendants explained in *CREW*—and as Klippenstein does not attempt to dispute—this court has recently had occasion to consider the actual "forensic" tools available to the FBI for recovering lost electronic records, and their limitations, in the Hillary Clinton email litigation. That case confirms that recovery of additional records is not likely here.

The facts of the Clinton email investigation, as relevant to the associated FRA litigation, were set out in a declaration by FBI Special Agent E.W. Priestap and a partially redacted FBI Letterhead Memorandum titled *Clinton Email Investigation* (attached as Exhibits A and B). The Memo states that the FBI recovered "approximately 17,448" emails that were not included in former Secretary Clinton's production to the FBI. *Clinton Email Investigation*, Ex. B at 19. As is clear from the Priestap declaration, however, the FBI's "forensic" review was able to recover additional emails because the FBI had access to backups of the missing files stored on server equipment, an external hard drive, and the cloud. *See* Priestap Decl. ¶¶ 8, 10, 11. The FBI was, however, unable to conduct a forensic review of at least one server because it could not be located. *Id.* ¶ 6. And despite securing "Grand Jury subpoenas related to [former Secretary Clinton's] Blackberry e-mail accounts," the FBI was unable to recover any records from the service providers for those devices "as the requested data was outside the retention time utilized by those providers." *Id.* ¶ 4.

Like in the Clinton investigation, searches for backups of files from the wiped phones have yielded some fruit in this case—specifically, around 1.6 GB of iMessages from Cuccinelli's iCloud account. *See* Granger Decl. ¶ 23, ECF 9-4 at 8. That backup only existed because Cuccinelli manually enabled iCloud syncing, *id.* ¶ 12 n.5, and there is no evidence in the record (or allegation in Klippenstein's complaint) that any similar backups exist for any other custodian. Like with the missing Clinton server, "forensic" examination of the devices issued to Wolf and Cuccinelli in this

case is out of the question, because they are no longer in agency possession. *See* Granger Decl. ¶ 12 n.6, ECF 9-4 at 5 (DHS phones submitted to WidePoint were either physically destroyed or recycled). And like with the Blackberry servers in the Clinton investigation, the records Klippenstein seeks are outside the retention periods of the relevant service providers, which means that recovery of those records is beyond even the coercive power of the FBI backed up by a grand jury subpoena.

NARA's expert judgment likewise confirms that when "phones [are] wiped" and the "provider does not retain a copy" of any text messages, "a referral to the Justice Department would not likely result in the recovery of any federal records." Declaration of Laurence Brewer ¶ 14, ECF 9-3 at 6. And that conclusion is hardly surprising in light of common sense: if phone manufacturers could not credibly represent that performing a factory reset—as was done with the phones at issue here—reliably places a user's data beyond reach, then sensitive personal, commercial, or governmental information would be at risk any time a user sells, trades in, or gives away an old phone, and any time an organization assigns a previously used phone to a new user.

Rather than attempt to satisfy his burden of showing redressability by offering arguments or factual allegations showing that "forensic tools" could lead to additional recovery in this case, Klippenstein instead requests jurisdictional discovery "to ascertain the relevant facts and support or refute the redressability of his claims." Pl's Opp. at 6. But jurisdictional discovery is not meant to be a mechanism to excuse pleading failures.

In this circuit, "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). However, "in order to get jurisdictional discovery a plaintiff must have a least a good faith belief that such discovery will enable it to show

that the court" has jurisdiction, *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998), and must "make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce,'" *NBC-USA Housing Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011) (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003)). A request for jurisdictional discovery, moreover, "cannot be based on mere conjecture or speculation." *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008), *rev'd on other grounds in Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021).

Klippenstein does not satisfy that standard. At most, he offers speculation that DOJ possesses forensic tools capable of recovering text messages from phones that have been reset and even physically destroyed (despite the contrary conclusion of *Judicial Watch III*). He claims (without support) that the FBI "regularly uses" such tools, but also that "relevant evidence on this issue rests solely with the Government." Pl's Opp. at 6, 7. He cannot have it both ways. If there is publicly available information demonstrating that the FBI possesses technical capabilities of the kind Klippenstein presumes, he should produce it and explain why further jurisdictional discovery is nevertheless necessary. If his request is instead founded solely on speculation about non-public resources available to the FBI in carrying out its law-enforcement and national security responsibilities, then it does not satisfy the requirements for seeking jurisdictional discovery and should be denied.

Finally, Klippenstein argues that even if he cannot show redressability as to records from the Secret Service, Wolf, and Cuccinelli, the Court should "not dismiss this case in its entirety" because his complaint purports to sweep more broadly to include any phones that were "otherwise materially altered." Pl's Opp. at 4-5. That is not enough to avoid dismissal. Redressability in this

case, as Klippenstein does not dispute, requires sufficient allegations that the Attorney General would be substantially likely to recover more federal records. He cannot possibly meet that standard—or sufficiently allege any injury in fact or causation—as to unspecified additional phones that were "otherwise materially altered," because he does not allege that any such phones or records actually exist or ever existed (this residual claim fails on the merits for the same reason, *see infra* Part IV).

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF ON THE MERITS

Even if Klippenstein could meet his burden on redressability, he has nevertheless failed to state a claim for relief on the merits.

### A.    The FRA's Enforcement Duty Applies Only When Records Have Been Removed From Agency Custody

As Defendants' opening brief explained, the plain text of the FRA expressly ties the agency head's and Archivist's duty to pursue enforcement through the Attorney General to the unlawful removal of records, and does not require the involvement of the Attorney General when records are destroyed.

The textual argument is straightforward. The section Klippenstein relies on requires the Archivist to notify the relevant agency head if any of a series of actions with respect to agency records, including "removal, defacing, alteration, [and] destruction," comes to her attention. 44 U.S.C. § 2905(a). It then separately requires the Archivist to "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." *Id.*

A parallel provision, directed to agency heads, requires the head of each federal agency to notify the Archivist of any "removal, defacing, alteration, corruption, deletion, erasure, or other

destruction of records." 44 U.S.C. § 3106(a). That provision likewise separately requires the agency head, "with the assistance of the Archivist," to "initiate action through the Attorney General for the recovery of records [that] have been unlawfully removed from the agency." *Id.* The next subsection sets a "reasonable period of time" limit for the agency head to "initiate an action for such recovery or other redress," beyond which the Archivist must request the Attorney General to "initiate such an action." *Id.* § 3106(b).

Neither provision mentions any of the other actions listed in their respective opening clauses as a predicate for action through the Attorney General, or any other specific form of redress besides "recovery." Neither provision, for example, specifically requires action through the Attorney General based on records that have been "unlawfully destroyed."

As this court concluded with respect to Section 3106, "because destruction is mentioned in the first clause, but not the second, this Court must assume that Congress' choice to exclude it was intentional." *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 147 (D.D.C. 2013) ("*CREW I*"). The same logic applies with equal force to Section 2905: If Congress had intended for all of the actions listed in the first clause to trigger the second clause's enforcement duty, it could easily have written the statute that way, for example by providing for "action through the Attorney General for ~~the recovery of records unlawfully removed and for other~~ redress provided by law."

Klippenstein does not dispute *CREW I*'s reasoning as to Section 3106, but urges this Court to read Section 2905 differently "[b]ecause the langue of § 2905(a) and § 3106(a) are markedly different." Pl's Opp. at 9. His argument relies entirely on the recent out-of-circuit decision in *Mary Ferrell Foundation, Inc. v. Biden*, No. 22-cv-06176-RS, 2023 WL 4551066 (N.D. Cal. July 14, 2023). That decision is not persuasive, and does not warrant a departure from *CREW I*.

Klippenstein's argument turns on a single distinction in wording between the two sections: Section 3106(a) only requires an agency head to initiate action through the Attorney General for "recovery of records" that "have been unlawfully removed," but Section 2905(a) refers to an "action through the Attorney General for the recovery of records unlawfully removed *and for other redress provided by law*." Pl's Opp. at 8 (quoting 44 U.S.C. §§ 2905(a), 3106(a)).

But as Klippenstein subsequently admits, "[s]uch a distinction also seems to be made within § 3106." Pl's Opp. at 8. Klippenstein makes no argument for why it should matter that Section 3106 refers to "other redress" in subsection (b) rather than in subsection (a), but his position depends on that assumption. The text of subsection (b), however, confirms that it describes precisely the same action through the Attorney General as in subsection (a), by referring to "an action for *such* recovery or other redress" when the only possible referent is the action described in subsection (a). 44 U.S.C. § 3106(b) (emphasis added). That makes sense: the relevant language in both sections was added as part of the same enactment, to describe the same set of duties for the same actors in the same circumstances. This is thus a textbook case of the elementary "principle that individual sections of a single statute should be construed together." *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972) (internal quotation marks omitted)). This court's reasoning in *CREW I* thus fully applies to both sections.

Klippenstein's argument from legislative history does not change the analysis. For one thing, "legislative history cannot trump a statute's plain meaning." *CREW I*, 916 F. Supp. 3d at 147. Moreover, although the legislative history (and the statutory text) demonstrate a general concern with "destruction" as well as "removal" of agency records, it does not follow that Congress intended to address that concern by encouraging maximal private enforcement of the FRA through

10

litigation. Instead, Congress in the original FRA "opted in favor of a system of administrative standards and enforcement" rather than relying on "private part[ies]" to bring enforcement actions, *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 149-50 (1980), and the 1984 amendments were intended to "establish a more effective administrative enforcement process to prevent the unlawful destruction or removal of records by agency officials," *Armstrong v. Bush*, 924 F.2d 282, 292 (D.C. Cir. 1991) ("*Armstrong I*"). Congress deliberately "circumscribed" the scope of "judicial review under the FRA" in actions by private plaintiffs. *Competitive Enterprise Inst. v. U.S. E.P.A.*, 67 F. Supp. 3d 23, 33 (D.D.C. 2014). Indeed, the Conference Report for the 1984 amendments expressly noted that the conferees were "mindful" of "protracted private litigation" over the FRA in the *Kissinger* case. H.R. Conf. Rep. No. 98-1124 at 28. General references to destruction of documents in the legislative history thus lend no support to Klippenstein's preference to maximize private litigation rather than administrative enforcement.

In any case, even if the Court were to agree with Klippenstein's argument that Section 2905(a)'s reference to "other redress" means something beyond recovery of removed agency records, that does not imply that anything beyond removal triggers a duty to seek such redress. That is because, as Defendants explained in *CREW*, "other redress" beyond or instead of "recovery" is indeed possible in cases of unlawful removal of agency records. Unlawful removal of agency records can, in certain circumstances, constitute a criminal offense, *see* 18 U.S.C. § 641, and criminal prosecution may be appropriate additional redress in a sufficiently serious case. And in certain circumstances, recovery may not be the only or even the most appropriate redress for an instance of unlawful removal of agency records; for example, if an agency employee removes records containing sensitive information (such as, for example, personal identifiable information)

that would otherwise be destroyed according to an approved record destruction schedule, ensuring the destruction of the records may be the most appropriate way to redress that unlawful removal.

Finally, Klippenstein's effort to dodge the implications of the constitutional avoidance doctrine—that the FRA should not be read to promote judicial entanglement in intra-Executive Branch disputes, *see* Def.s' Mot. to Dismiss, ECF 9-1 at 20-21—is not persuasive. He claims that an "enforcement action" by DOJ is not necessary because DOJ "possesses several possible alternative methods for recovering these text messages—some technical and some legal." Pl's Opp. at 10. But the cause of action he relies on is precisely to seek "judicial review of the agency head's or Archivist's refusal to seek the initiation of *an enforcement action* by the Attorney General." *Armstrong I*, 924 F.2d at 295 (emphasis added). Moreover, the "legal" methods available to DOJ but not, generally, to other agencies are the very coercive tools such as civil lawsuits, subpoenas, and criminal prosecutions that implicate the separation-of-powers concerns that Klippenstein purports to sidestep. Nor does Klippenstein's argument work if limited to the "technical" tools he claims are available to DOJ but not other agencies: his reading of the FRA would necessarily enmesh the judiciary in intra-Executive Branch decisionmaking about the allocation of investigative and "technical" resources, again raising the exact concerns that the constitutional avoidance doctrine seeks to allay. In contrast, reading the FRA's enforcement duty as limited to cases of improper removal of agency records raises no such red flags, because enforcement actions in such cases target individual government employees in their personal capacities, not whole executive agencies. *Cf., e.g.*, *United States v. Navarro*, No. 22-cv-2292-CKK, --- F. Supp. 3d ---, 2023 WL 2424625 (D.D.C. March 9, 2023) (action under the Presidential Records Act for recovery of records against former White House employee in his personal capacity).

**B.     Plaintiff Has Failed To Plead Facts Sufficient To Overcome The Presumption Of Regularity**

The presumption of regularity requires this Court, absent specific allegations to the contrary, to presume that government officials have "properly discharged their duties." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997). It applies "to government produced documents no less than to other official acts." *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011).

Like *CREW*, Klippenstein takes a "guilt by association" approach to the presumption of regularity, listing nine allegedly irregular actions in bullet point form, but declining even to attempt to argue that they show that any particular custodian failed to properly discharge their duties as to the records at issue. *See* Pl.'s Opp. at 11–12. Instead, Klippenstein dismisses the requirement to identify "*specific* custodians who acted improperly" as "entirely frivolous." *Id.* at 12. Plaintiff's incredulity, however, is not a substitute for argument or authority, and his burden is indeed to adduce "specific information" showing that particular officials are not entitled to the presumption. *Competitive Enterprise Inst. v. OSTP*, 241 F. Supp. 3d  14, 22 n.2 (D.D.C. 2017).

None of Klippenstein's bullet points adequately alleges that any of the custodians at issue—Wolf, Cuccinelli, and the Secret Service agents whose phones were wiped in the Intune migration—failed to follow their preservation duties under the FRA. Notably, those duties did not require the preservation of every text message ever sent on a government-issued phone—a point Klippenstein does not dispute. *See* NARA, General Records Schedule 5.2 (permitting the destruction of "[t]ransitory records" once "no longer needed for government use").[1] Klippenstein's allegations that text messages were deleted, *see* Pl's. Opp. at 11–12, thus do not defeat the

---

[1] *Available at* https://www.archives.gov/files/records-mgmt/grs/grs05-2.pdf (last visited August 25, 2023).

presumption of regularity, because he does not also allege (1) that those messages were required to be preserved beyond the time of deletion and (2) that they were not so preserved.

Klippenstein attempts to turn the presumption of regularity against the Defendants, arguing that "the presumption of regularity afforded to one set of officials is necessarily overcome by the presumption of regularity afforded to numerous other sets of officials who allege that the first set acted irregularly." Pl.'s Opp. at 13. That would perhaps be a good argument if its premises held. But none of the other governmental actions Klippenstein points to actually involves any allegation that the custodians at issue here acted improperly with respect to their duties under the FRA. There is thus no contradiction with Defendants' position in, for example, affording Secret Service personnel a presumption of regularity in "informing the DHS OIG that text messages were erased during the Intune migration and could not be located." Pl.'s Opp. at 12. Per Klippenstein's own allegations, OIG "requested electronic communications from the Secret Service related to January 6," with no apparent limitation to communications required to be preserved under the FRA. Compl. ¶ 10, ECF 1 at 3. Likewise, Klippenstein alleges that OIG "opened a criminal investigation" relating to "the deletion of the Secret Service text messages," *id.* ¶ 20, ECF 1 at 5, but does not allege that OIG is investigating any potential criminal violations *of the FRA*. Similarly, affording NARA the presumption of regularity with respect to "opening investigations into the destruction of records," Pl.'s Opp. at 12, is fully consistent with affording the presumption of regularity to the custodians at issue here, because *opening* an investigation is not the same thing as concluding that a violation has actually occurred. NARA's regulations thus unsurprisingly cover situations where NARA receives "credible information" of a "risk" to agency records, and where "records have allegedly been damaged, removed, or destroyed." 36 C.F.R. § 1230.16. Finally, the allegation that the Integrity Committee of the Council of Inspectors General for Integrity and Efficiency has

"open[ed] an investigation into DHS OIG regarding the destruction of records," Pl.'s Opp. at 12-13, is plainly irrelevant, because none of the relevant custodians are alleged ever to have been employed by DHS OIG.

Klippenstein concludes with the peculiarly self-defeating argument that the Court cannot consider the agencies' declarations as authority for the preservation duties of DHS and Secret Service employees. *See id* at 13. That may be so, but Klippenstein is seeking to enforce the FRA itself, not DHS's internal records-preservation policies. If the FRA and NARA's General Records Schedules implementing it do not impose a preservation duty for the records Klippenstein seeks, then this case has bigger problems than the presumption of regularity, and further factual allegations would not be enough to save it.

## III.     MANDAMUS JURISDICTION IS NOT AVAILABLE

As Defendants explained in their opening brief, and as Klippenstein does not dispute, "[a] court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010). "These three threshold requirements are jurisdictional; unless all are met, a court *must dismiss* for lack of jurisdiction." *Am. Hops. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (emphasis added).

Klippenstein also does not dispute this court's conclusion in *CREW I* that the APA constitutes an "other adequate remedy" for his claims, even if the APA claim fails in the particular circumstances of this case, *see CREW I*, 916 F. Supp. 2d at 152, and in fact affirmatively concedes that his claims are "duplicative," Pl.'s Opp. at 13. It is thus undisputed that this case does not satisfy the criteria for mandamus relief, and that this Court lacks jurisdiction over Klippenstein's mandamus claim. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction

is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

Despite that blackletter law, Klippenstein asks the Court not to dismiss yet, because doing so would be "premature" for reasons that Klippenstein does not provide. Pl.'s Opp. at 13. The case Klippenstein primarily relies on offers no reason to postpone dismissal, because in that case, the court did not conclude—and the plaintiff there does not appear to have conceded—that the mandamus claim was duplicative of an APA claim. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 44 (D.D.C. 2002). Instead, the court considered the possibility of relief under the APA as part of its consideration of the distinct question of whether to exercise its discretion to order mandamus relief in a situation in which the three predicate conditions for mandamus are satisfied. *See id.* In that context, the possibility of APA relief was "relevant to whether the mandamus relief requested will be necessary," a question that the court determined would be "premature" to resolve at that stage. *Id.* That does not help Klippenstein, because the Court lacks jurisdiction to reach the discretionary portion of the mandamus analysis given the conceded availability of adequate alternative relief under the APA.

The other case Klippenstein cites does appear to have considered the mandamus claims to be duplicative of the plaintiff's APA claims. *See  Citizens for Resp. & Ethics in Washington v. Exec. Office of the President*, 587 F. Supp. 2d 48, 63 (D.D.C. 2008). To the extent it did so yet declined to dismiss the mandamus claims, however, the court in that case erred.

IV.  **THIS CASE IS MATERIALLY IDENTICAL TO *CREW*, AND SHOULD BE CONSOLIDATED WITH *CREW* IN THE EVENT THE COURT DENIES THE MOTION TO DISMISS**

Klippenstein concedes that this case is sufficiently "identical" to *CREW* that "the Court would have good reason to issue a single opinion regarding NARA's pending motions to dismiss" in both cases, Pl.'s Opp., ECF 14 at 1, and that "the legal theory for relief is the same in both cases," Pl.'s Opp. to Consolidation, ECF 12 at 5. Nor does he dispute that consolidation is appropriate when cases feature "common question[s] of law or fact," Fed. R. Civ. P. 42(a), and where plaintiffs seek the same relief from defendants sued in the same capacities. *See* Pl.s Opp. to Consolidation, ECF 12 at 2-3 (citing *Clayton v. D.C.*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014)).

He nevertheless opposes consolidation in the event that the Court denies the pending motions to dismiss in each case, on grounds of alleged gamesmanship and certain notional differences in scope between the cases. Neither is a basis to deny consolidation.

Klippenstein begins by accusing Defendants of "procedurally suspect" "legal maneuvering" and "gamesmanship" in filing related-case notices in both cases "which resulted in the reassignment of the case to this Court" and then moving for consolidation in this case, apparently as part of an effort to circumvent Local Rule 40.5(d). *Id.* at 2, 6. Plaintiff's aspersions are baseless. Defendants filed related-case notices in both cases in compliance with Local Rule 40.5(b)(3), which provides that "[w]henever an attorney for a party in a civil . . . action becomes aware of the existence of a related case or cases, the attorney shall *immediately* notify, in writing, the judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties." L. Civ. R. 40.5(b)(3) (emphasis added). In those notices, which were in relevant part identical, Defendants did not request reassignment or any particular action from the Court. *See* ECF 4. In response, Klippenstein himself, voluntarily and without being otherwise prompted by Defendants, stipulated to the reassignment of this case. *See* ECF 5. By doing so, Klippenstein

rendered Local Rule 40.5(d) inapplicable to these cases, because that rule concerns only "cases assigned to different judges of this Court." L. Civ. R. 40.5(d). Briefing on the motion to dismiss in *CREW* was already complete at that point, and Defendants have not yet moved for consolidation in *CREW* because they seek consolidation only in the event that the Court denies the pending motions to dismiss.[2] Should the Court deny the motions to dismiss, Defendants will file a materially identical consolidation motion on the docket in *CREW*, thereby "providing CREW an opportunity to respond." Pl.'s Opp. to Consolidation, ECF 12 at 2.

Klippenstein goes on to argue that this case differs in scope from *CREW*. But the three minor differences in phrasing he points to are not material. First, he claims that CREW's request "is expressly limited" to records from Cuccinelli's personal phone, whereas he requested a NARA investigation into any DHS phones that were "migrated, transitioned, replaced, reset, or otherwise materially altered." Pl's Opp. to Consolidation, ECF 12 at 4. That argument misconstrues the scope of *CREW*'s complaint, which concerns text messages on both Cuccinelli's government-issued phone and his personal phone. *See CREW*, No. 22-cv-3350, ECF 1 at 16-17, (Compl. ¶¶ 55, 57). In its opposition to the motion to dismiss, CREW separately briefed the issues surrounding Cuccinelli's personal phone, because Defendants' redressability argument does not apply to that portion of their complaint, *see id.*, ECF 10 at 19 (Opp. to Mot. to Dismiss), but Defendants do not understand them to have thereby abandoned their distinct claims as to Cuccinelli's government issued phone(s).

In any case, the distinction Klippenstein seeks to draw is irrelevant, because on the facts alleged in the complaint, there is no material difference between the specific records identified in

---

[2] Defendants agree with Klippenstein that a single opinion would be sufficient to resolve the pending motions to dismiss in both cases.

both complaints and Klippenstein's broader attempt to seek FRA enforcement for "any phones across all of DHS" that were "materially altered" in any way. Pl's Opp. to Consolidation, ECF 12 at 4. That is because, even on Klippenstein's reading, the FRA provision that Klippenstein seeks to enforce imposes duties on the Archivist only as to incidents of removal, destruction, etc. "that shall come to the Archivist's attention." 44 U.S.C. § 2905(a). Klippenstein does not allege any incidents of destruction or removal of records beyond the deletion of Secret Service texts in the Intune migration, and the resets of Wolf's and Cuccinelli's government phones, or that any such incidents have come to the Archivist's attention. He thus lacks a cause of action and has failed to state a claim for any unspecified additional incidents of removal or destruction of federal records. (For the same reason, he cannot show injury in fact, causation, or redressability as to any such unknown potential incidents, *see supra* Part I).

The same is true of the other two factual distinctions Klippenstein attempts to draw. He "used a six-month timeframe" in his request to NARA for an investigation, where CREW only sought records lost in January 2021. Pl.'s Opp. to Consolidation, ECF 12 at 4. But since Klippenstein does not allege that any additional FRA violations occurred in that time frame, his broader request is irrelevant. Likewise, CREW sought records lost during a "reset" of government phones, but Klippenstein seeks all records from phones that were "otherwise materially altered." *Id.* at 4-5. That difference could only matter if Klippenstein could identify any specific alleged FRA violation that his request would cover but that CREW's would not, which he has not done.

The same reasoning forecloses the legal distinctions Klippenstein attempts to draw between the two cases. Klippenstein claims that Defendants' redressability argument would apply to this case only if he had "requested the same type of investigation and recovery for the same set of records." *Id.* at 5. Not so. As explained above, redressability turns on whether there is a substantial

likelihood that the Attorney General could recover additional federal records. It has nothing to do with what, if any, investigation a given private party may have requested from NARA. Klippenstein cannot point to any specific federal records that he alleges were removed or destroyed that do not fall within the scope of the redressability argument, with supporting facts, that Defendants have made in both cases.

Klippenstein's final distinction fails for the same reason. He claims that this case differs "administratively" from *CREW*, because NARA completed an investigation in response to CREW's request but has not "even *begun* an investigation in response to Klippenstein's request." *Id.* at 5. But Klippenstein is seeking to enforce a duty on NARA to "initiate action" through the Attorney General, not to conduct an investigation of its own, and none of Defendants' arguments in this case turn on the prospect of further investigation by NARA. Any difference in administrative posture between this case and *CREW* is thus irrelevant.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint for lack of jurisdiction, or if the Court determines that it may exercise jurisdiction, for failure to state a claim on the merits. Should the Court deny the motion to dismiss, it should consolidate this case with *CREW* for further proceedings.

Dated: August 25, 2023                                    Respectfully submitted,

                                                          BRIAN M. BOYNTON
                                                          Principal Deputy Assistant Attorney General

                                                          ELIZABETH J. SHAPIRO
                                                          Deputy Director, Federal Programs Branch

                                                          */s/ Cormac A. Early*
                                                          CORMAC A. EARLY
                                                          D.C. Bar No. 1033835

Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

*Counsel for Defendants*