**EXHIBIT A**

**UNCLASSIFIED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>REX TILLERSON, in his official capacity as Secretary of State,<br><br>Defendant. | Civil Action No. 15-cv-0785 |
| CAUSE OF ACTION INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>REX TILLERSON, in his official capacity as Secretary of State, and DAVID S. FERRIERO, in his official capacity as Archivist of the United States,<br><br>Defendants. | Civil Action No. 15-cv-1068 |

### DECLARATION OF E. W. PRIESTAP
### FEDERAL BUREAU OF INVESTIGATION

(U) I, E.W. Priestap, hereby declare and say:

1. (U) I have been a Special Agent with the Federal Bureau of Investigation (FBI) for eighteen (18) years. I was assigned to the Counterintelligence Division at FBI Headquarters as the Assistant Director in December 2015. Before then, I served as the Deputy Assistant Director of the Intelligence Operations Branch in the Directorate of Intelligence at FBI Headquarters. Prior to that, I was named Special Agent in Charge of the Counterintelligence

1
**UNCLASSIFIED**

Division in the New York Field Office in 2013, where I supported counterterrorism and counterintelligence operations since 2006 as a Supervisory Special Agent.

2.  (U) On July 10, 2015, the FBI initiated a full investigation based upon a referral from the US Intelligence Community Inspector General (ICIG), submitted in accordance with Section 811(c) of the Intelligence Authorization Act of 1995 and dated July 06, 2015, regarding the potential unauthorized transmission and storage of classified information on the personal e-mail server of former Secretary of State Hillary Clinton (Clinton). In my capacity as the Assistant Director assigned to counterintelligence and counterespionage matters, I supervised the Clinton investigation. I make this declaration to provide the Court with background information regarding investigative efforts taken to obtain repositories of e-mail which would assist the FBI in reviewing the potential unauthorized transmission and storage of classified information. The information stated herein is based on my personal knowledge, my review and consideration of documents and information available to me in my official capacity, and information furnished to me by Special Agents and other employees of the FBI.

**INVESTIGATIVE ACTIONS TAKEN TO ACQUIRE REPOSITORIES OF E-MAIL**

3.  (U) A primary focus of the FBI's investigative efforts was the recovery of non-governmental e-mail repositories used by Clinton during her tenure as Secretary of State. In furtherance of its investigation, the FBI acquired or sought access to computer equipment and mobile devices used during the former Secretary's tenure in order to forensically review items and obtain evidence to evaluate the potential unauthorized transmission and storage of classified information. Although this Declaration provides a general overview of the FBI's investigative efforts, much more detailed information on specific investigative actions and specific computer equipment and mobile devices can be found in the *Clinton E-Mail Investigation: Mishandling of*

*Classified – Unknown Subject of Country (SIM)* Letterhead Memorandum (LHM), of which an unclassified and publically available version is attached to this declaration for review.[1]

### A. Clinton's Personal E-Mail Server Systems

4.     (U) Prior to January 21, 2009, when she was sworn in as the U.S. Secretary of State, Clinton used a personally-acquired BlackBerry device with service initially from Cingular Wireless and later AT&T Wireless, to access her personal e-mail accounts. Clinton initially used the e-mail address hr15@mycingular.blackberry.net and then changed to hr15@att.blackberry.net. These e-mail addresses continued to be utilized for a brief time during Clinton's tenure (January 21, 2009 until March 18, 2009). The FBI's investigation only concerned the potential unauthorized transmission and storage of classified information on the personal e-mail server during former Secretary Clinton's tenure at the Department of State (DOS). Initially, an investigative emphasis was placed on obtaining early tenure e-mails in order to understand the circumstances for deciding to use the private e-mail server. As described in greater detail below, the FBI primarily sought to obtain the actual devices used by Clinton to facilitate e-mail, such as BlackBerrys, as well as any archived repositories of Secretary Clinton's e-mails, through consensual agreement. The FBI also obtained Grand Jury subpoenas related to the Blackberry e-mail accounts, which produced no responsive materials, as the requested data was outside the retention time utilized by those providers. The FBI did not recover any information indicating that Clinton sent an e-mail from her hr15@mycingular.blackberry.net or hr15@att.blackberry.net e-mails after March 18, 2009.

---

[1] The attached LHM is the unclassified version publically available on the FBI's website, which has classified information and personal identifying information redacted in accordance with statutory obligations. *See* https://vault.fbi.gov/hillary-r.-clinton.

5. (U) In mid-to-late January 2009, Clinton transitioned to the hdr22@clintonemail.com account, which utilized a newly-created private domain for e-mail initially hosted on a private server (the "Apple Server") located at Clinton's Chappaqua, New York residence. In or around January 2009, a decision was made by Clinton's staff to move the clintonemail.com domain to another server because the Apple Server was antiquated and users were experiencing problems with e-mail delivery on their BlackBerry devices.

6. (U) In or around March 2009, a second private server (the "Pagliano Server") was installed at the Chappaqua residence. During the installation of the Pagliano Server, Clinton's former staff believe all e-mail from the Apple Server was migrated, and therefore no e-mail content should have remained on the Apple Server. Following the e-mail migration from the Apple Server to the Pagliano Server, the Apple Server was repurposed to serve as a personal computer for household staff at the Chappaqua residence. Sometime in 2014, and after the Secretary's tenure at DOS, some data from the repurposed Apple Server was transferred to a new Apple iMac computer, and the hard drive of the old Apple Server was discarded. The FBI was therefore unable to obtain the original Apple Server for a forensic review.

7. (U) The FBI did not seek to obtain the iMac computer for forensic review because the device did not facilitate Secretary Clinton's use of e-mail during her tenure. At the request of the FBI, DOJ requested that Williams & Connolly LLP, Clinton's private counsel, coordinate a review of all data on the iMac to determine whether e-mail repositories from the Apple Server were still present from the 2014 data transfer through a keyword search consisting of terms identified by the FBI. On October 14, 2015, Williams & Connolly confirmed to DOJ that a review of the iMac was conducted pursuant to the request and no e-mails were found belonging to Clinton from the period of her tenure as Secretary of State. During the course of

the investigation, the FBI found no information to indicate that the review of the iMac by Williams & Connolly was not comprehensive and accurate.

8. (U) The successor Pagliano Server consisted of several pieces of equipment discussed in detail in the LHM. The Pagliano Server was set to conduct a complete backup on a Seagate external hard drive once per week, with a differential backup (a cumulative backup of all changes occurring since the last full backup) being completed every day, and this continued from the initial Pagliano Server installation in March 2009 until June 2011, when the external hard drive was replaced. The external hard drive was replaced with a Cisco Network Attached Storage (NAS) device, to store backups of the server. The FBI was unable to forensically determine how frequently the NAS captured backups of the Pagliano Server. As discussed further below, the FBI was able to obtain the Pagliano Server, the Seagate external hard drive, and the NAS. The FBI's forensic analysis of the three repositories resulted in the recovery of e-mails and documents from within the Secretary's tenure.

9. (U) In early 2013, because of user limitations and reliability concerns regarding the Pagliano Server, Clinton's staff discussed future e-mail server options through a vendor. On or about July 18, 2013, Platte River Networks (PRN) finalized terms for a service agreement to host e-mail services for Clinton (the "PRN Server"). Prior to finalization, on or around June 23, 2013, PRN transported the Pagliano Server to a datacenter in Secaucus, New Jersey run by Equinix, Inc. (Equinix). The PRN Server remained at the Equinix facility until the PRN Server and associated equipment were voluntary produced to the FBI on October 03, 2015. The migration of the clintonemail.com domain from the Pagliano Sever to the successor PRN Server began to occur on or around June 30, 2013, and the Pagliano and PRN Servers functioned together at least in part until Microsoft Exchange was fully uninstalled on the Pagliano Server on

December 03, 2013. During the migration period to the PRN Server, a portion of Clinton's e-mails were transferred utilizing a known commercial e-mail account. The FBI, in the course of its investigation, was able to obtain and review these files.

10. (U) As part of the new PRN Server, PRN configured a backup device from Datto, Inc. (Datto), a Datto SIRIS 2000, to take multiple images of the server system daily, with a retention period of 60 days. The Pagliano Server remained in the same server cage as the PRN Server until it was obtained by the FBI in August 2015 via consent provided by Clinton through Williams & Connolly. Through the investigation, the FBI was also able to obtain the PRN server and the Datto SIRIS 2000, and to access the cloud backup of the Datto device. The FBI's forensic analysis of these repositories resulted in the recovery of e-mails and documents within the Secretary's tenure. Of note, forensic analysis of the Datto backups revealed some e-mails associated with the time period between January 21, 2009 and March 18, 2009, none of which were provided by Secretary Clinton because of an inability to locate the files.

**B. Mobile Devices Associated with Clinton's E-Mail Server Systems**

11. (U) The FBI's investigation identified thirteen (13) total mobile devices which potentially were used to send e-mails using Clinton's clintonemail.com e-mail addresses. On February 9, 2016, DOJ requested all 13 mobile devices from Williams & Connolly. Williams & Connolly replied on February 22, 2016 that they were unable to locate any of these devices. As a result, the FBI was unable to acquire or directly forensically examine any of these 13 mobile devices during the course of the investigation. The FBI was able to consensually obtain some backup copies of devices utilized by former Secretary Clinton in the course of the investigation from former members of Clinton's staff. The FBI's forensic analysis of the repositories resulted in the recovery of e-mails and documents within the Secretary's tenure.

12.     (U) On October 16, 2015, Williams & Connelly provided two (2) BlackBerry devices to the FBI and indicated the devices may contain or had previously contained e-mails from Clinton's personal e-mail account during her tenure as Secretary of State. FBI forensic analysis found no evidence to indicate either of the devices provided by Williams & Connelly were connected to one of Clinton's personal servers or contained-mails from her personal accounts during her tenure.

13.     (U) The FBI identified five (5) iPad devices associated with Clinton which potentially were used to send e-mails from Clinton's clintonemail.com e-mail addresses. The FBI obtained three (3) of the iPads. One iPad contained three tenure e-mails from 2012 in the hdr22@clintonemail.com "drafts" folder. The FBI did not recover any e-mails from Clinton's personal e-mail accounts from either of the other two iPads in its possession. The FBI did not obtain the remaining two iPads because they were no longer in Clinton's possession and investigative activities indicated there was no likelihood that tenure e-mails would be present.

## CONCLUSION

14.     (U) The FBI undertook all reasonable and comprehensive efforts to recover e-mails relevant to investigating the potential unauthorized transmission and storage of classified information on the personal e-mail server of former Secretary Clinton. This effort consisted of acquiring all potentially work-related e-mails within the former Secretary's tenure and then undertaking classification reviews of each identified e-mail in conjunction with U.S. Government partners. As of July 2016, the FBI recovered several thousand unique work-related and personal e-mails from Clinton's tenure associated with the hdr22@clintonemail.com e-mail address that were not provided by Williams & Connelly as part of Clinton's production to the Department of State (DOS). The FBI has since turned over all of these e-mails and other

documents to DOS for agency record determination.[2] In connection with an unrelated pending investigation, the FBI learned of the existence of e-mails that appeared pertinent to the Clinton investigation and took appropriate steps to allow investigators to review those e-mails. Investigative activities undertaken in October 2016 with respect to those e-mails resulted in additional e-mails being discovered which may be potentially work-related. The FBI will also provide these e-mails to the DOS for agency record determination. It is my opinion that there are no further investigative actions that can be undertaken by the FBI to recover additional Clinton work-related e-mails which would be meaningful to the investigation, as described above.

---

[2] The FBI did not and could not make assessments of whether these e-mails were Department of State records under the Federal Records Act.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this 24th day of April, 2017.

_E.W. Priestap_
E. W. Priestap
Assistant Director
Counterintelligence Division
Federal Bureau of Investigation